BOROUGH OF TOTOWA, A MUNICIPAL CORPORATION OF NEW JERSEY, ET AL., PLAINTIFFS-RESPONDENTS, v. PASSAIC COUNTY BOARD OF TAXATION, ET AL., DEFENDANTS-APPELLANTS.

Argued September 25, 1950—Decided October 23, 1950.

Mr. *Oscar R. Wilensky* argued the cause for the appellants (*Messrs. Oscar R. Wilensky* and *Herman Scott*, attorneys for the City of Passaic; *Messrs. Charles S. Joelson* and *George Dimond*, attorneys for the City of Paterson).

Mr. *Joseph L. Lippman* argued the cause for the respondents (*Mr. Herbert H. Fine*, on the brief; *Mr. Joseph L. Lippman*, attorney for Borough of Totowa; *Mr. Joseph M. Harrison*, attorney for Borough of North Haledon, Borough of Bloomingdale and Borough of West Paterson; *Mr. Mitchell Donato*, attorney for Borough of Wanaque; *Mr. John G. Dluhy*, attorney for City of Clifton; *Mr. Bernard Goldstein*, attorney for Borough of Pompton Lakes; *Mr. Louis Wallisch, Jr.*, attorney for Borough of Ringwood and Township of West Milford; *Mr. C. Alfred Wilson*, attorney for Township of Wayne; *Mr. George T. Anderson, Jr.*, attorney for Township of Little Falls; and *Mr. Francis Caminetti*, attorney for Borough of Hawthorne).

The opinion of the court was delivered by

VANDERBILT, C. J. On March 9, 1949, the Passaic County Board of Taxation, acting in accordance with *R. S.* 54:3–17 to 19, approved an equalization table for the county for the year 1949 which set forth the assessed value of the real property in each of the county's sixteen taxing districts, as shown by the tax lists and duplicates filed with the County Board by the local assessors pursuant to *R. S.* 54:4–35, and the true value thereof as found by the County Board, which in the case of each of the twelve plaintiff taxing districts was an amount 10% in excess of the assessors' valuation. On the same day the County Board, as required by *R. S.* 54:4–55, certified as correct the tax lists and duplicates of all the taxing districts in the county without, however, having revised the tax lists and duplicates of the twelve plaintiff taxing districts to reflect the 10% increase in real property valuation shown on the equalization table. Thereafter the County Board prepared the table of aggregates as required by *R. S.*,

54:4–52 and fixed the tax rate for each of the sixteen taxing districts.

In arriving at the tax rates, the total amount to be raised for county purposes was apportioned among the sixteen taxing districts on the basis of the ratio between the total net property valuation in the district and the total net property valuation in the county, both as shown by the table of equalization. Then to each district's share of county taxes as thus apportioned was added the amount to be raised within the district for municipal and school purposes and this sum was divided by the total net valuation of the property in the district as taken from the tax lists and duplicates certified by the County Board. The quotient was the tax rate for the district. Thus it is seen that the County Board used real property valuation as shown by the table of equalization, which reflected the 10% increase in the assessment of the twelve plaintiff taxing districts, for the purpose of apportioning to each district its fair share of the county tax burden, but used the tax lists and duplicates, which did not reflect the 10% increase, for the purpose of determining the tax rate within each district.

The twelve plaintiff taxing districts considered the rates as fixed by this procedure to be erroneous, claiming that R. S. 54:4–48 requires the County Board to have the 10% increase in valuation entered upon the tax lists and duplicates and that the failure to have this done resulted in the tax rates in each of the plaintiff districts being too high, thereby placing an undue tax burden upon personal and second-class railroad property and depriving the real property owner of his right to appeal from his increased taxes.

The position of the twelve plaintiff taxing districts is clearly illustrated by the following figures with respect to the City of Clifton, which is typical of all the plaintiffs. The tax list and duplicate for Clifton as filed by the assessor, contained assessments of $64,679,150 for real property; $7,811,700 for personal property; and $103,660 for second-class railroad property. After various statutory deductions amounting to

$2,083,150 there remained a total net valuation of $70,511,360 upon which county taxes would be apportioned in the absence of revision, correction or equalization by the County Board. The County Board, however, then increased the total real property valuation by 10% to $71,147,065, making the total net valuation of Clifton as shown in the table of equalization $76,979,275. By comparing this figure of $76,979,275 to $439,228,003, the total of all the valuations of all the taxing districts in the county as shown by the table of equalization, it was determined that of the $3,886,111.29 to be raised for county purposes Clifton's share was $681,081.42. By adding this amount to the $1,734,501.44 needed for schools and the $1,138,717.73 required for other local purposes, the total tax to be raised in Clifton proved to be $3,554,300.59. With these calculations by the County Board the plaintiffs herein have no complaint. The County Board then proceeded to determine the tax rate by dividing the sum of $3,554,300.59 by $70,511,360, as shown on the uncorrected tax list and duplicate, to arrive at a tax rate for Clifton of $5.04 per hundred dollars. If the County Board had corrected the tax list and duplicate as the plaintiffs claim they were required to do by R. S. 54:4–48, the sum of $76,979,275 would have been the divisor and the rate would have been only $4.62 per hundred dollars, a difference of 42 points.

With a tax rate of $4.62 the personal property owners in Clifton would have paid $32,809.14 less in taxes (42 points on a total valuation of $7,811,700) and the second-class railroad property owners would have paid $435.37 less (42 points on a total valuation of $103,660). Thus the plaintiffs assert that the effect of the higher rate was improperly to relieve the real property owners in Clifton of $33,244.51 in taxes and to shift that burden to other property owners in the city. Moreover, they contend that by increasing the tax rate rather than the assessed valuation of real property certain property owners may have lost the right to appeal from the tax increase. For example, if a parcel of real property had originally been assessed at its full true value of $10,000, and by virtue of the

10% increase that assessment were raised to $11,000, the property owner would have had the right to appeal on the grounds that his property was now assessed at more than true value.

Accordingly, on April 20, 1949, the twelve plaintiff taxing districts filed petitions with the Division of Tax Appeals seeking to have their tax rates, as certified by the County Board, set aside and corrected. The Division of Tax Appeals dismissed all the petitions on the ground that the appeal should have been taken to the County Board pursuant to *R. S.* 54:3–21. From this judgment all twelve of the plaintiff taxing districts appealed to the Appellate Division of the Superior Court, which, after granting permission for the taking of evidence under the provisions of *Rule* 3:81–9, held (1) that the plaintiff taxing districts had the right to appeal directly to the Division of Tax Appeals under *R. S.* 54:2–35, since *R. S.* 54:3–21 provided only for an appeal from an assessed valuation of property and the instant appeals were from the fixing of a rate of taxation; (2) that the rates had been incorrectly computed, since *R. S.* 54:3–19 and *R. S.* 54:4–48 were *in pari materia,* and the County Board should have corrected the tax lists and duplicates by entering the 10% increase in real property valuation prior to computing the tax rates; and (3) remanded the case to the County Board with instructions that appropriate debits or credits be made to each taxing district on account of its share of the current taxes due in the next ensuing year. The cities of Passaic and Paterson, two of the four taxing districts where real property valuations were not increased by the County Board, then sought and were granted certification to review this judgment of the Appellate Division.

Only two questions are presented for determination here: first, should the County Board have had the 10% increase in real property valuation entered on the tax lists and duplicates, or, in other words, is *R. S.* 54:4–48 applicable when real property valuations are equalized under *R. S.* 54:3–17 to 19; and second, assuming that the Appellate Division was correct in

holding the procedure followed by the County Board to be erroneous and the tax rate therefore to be incorrect, did it, in the light of *R. S.* 54:4–58 and 59, properly remand the case to the County Board rather than attempting to correct the error itself? It should be pointed out for the sake of clarity that there is no issue here as to the jurisdiction of the Division of Tax Appeals, nor is the action of the County Board in increasing the real property valuation in the twelve plaintiff taxing districts questioned, for no appeal has been taken from the confirmation by the County Board of the equalization table. It may therefore be assumed that under the procedure followed by the County Board each taxing district is bearing only its fair share of the total tax burden and that the only complaint is that the tax burden of the twelve plaintiff taxing districts is improperly distributed among the property owners within each of these districts.

It is clear from an examination of the tax statutes that the Legislature has provided for two separate methods of tax equalization. The first method, provided for by *R. S.* 54:3–17 to 19, requires the County Board to determine the percentage of full value at which the real property of each taxing district is assessed according to the tax lists presented to it by the local assessors and to prepare and confirm an equalization table showing the assessed valuation of the real property in each district, the percentage, if any, by which the assessed valuation should be increased or decreased in order to correspond to true value, and the true value of the real property within the district as determined by it. It was by the use of this method, which is herein referred to as the aggregate method, that the County Board increased the real property valuations in the twelve plaintiff taxing districts by 10%. The second method is provided for by *R. S.* 54:4–46 to 49 and requires the County Board to revise, correct and equalize the assessed value of all property in the taxing districts by raising or decreasing the assessed value of any property not truly valued, add any property omitted from the tax list and in general to do everything necessary for the taxation of all

property in the county equally and at its true value. This method is referred to herein as the individual method. The dispute in this case centers around whether or not R. S. 54:4–48 applies to both these methods or only to the individual method. This controversial section reads as follows:

"The county board of taxation shall enter all changes or additions on the various tax lists and duplicates, and, upon ascertaining the total amount of tax to be raised, fix and adjust the amount of state school, state and county tax to be levied in each taxing district in the county in proportion to the respective values thereof, and the amount to be levied in each taxing district for local purposes as certified to it. It shall cause each assessor to enter in appropriate columns upon the tax lists and duplicates for his respective taxing district the net corrected value assessed to each person for both real and personal property, and to enter the addition of the items of each column at the foot thereof, on every page, the rates per dollar, which shall be such as according to the valuation on the duplicate will be sufficient to produce the sum required, and to extend on the duplicates the amount of tax computed on each assessment at that rate."

The court below held that this section and R. S. 54:3–19, which provides that the valuation of real property as shown on the equalization table shall be deemed to be the true valuation of such property in computing the total ratables of each district for the apportionment of county taxes, are *in pari materia* and must be read together. In support of this view the plaintiffs assert that R. S. 54:3–17 to 19 and R. S. 54:4–46 to 47 all have their origin in the tax act of 1906 (*P. L.* 1906, *pp.* 210 *et seq.*) and give the County Board the power to revise and equalize in the first instance, and that R. S. 54:4–48, 52 and 55, also have their origin in the tax act of 1906 and direct the manner in which such revision or equalization, once determined upon, shall be carried into effect. Suffice it to say in answer to this argument that an examination of the 1906 act fails to reveal any procedure for tax equalization similar to the aggregate method provided for in R. S. 54:3–17 to 19. The aggregate method of equalization first appeared in language substantially identical with that of the present statute in Chapter 31 of the Laws of 1917, which was, however, repealed by Chapter 236 of the Laws of 1918. The re-

enactment of the aggregate method was attempted by Chapter 115 of the Laws of 1927 as an amendment to the repealed statute of 1917. It was finally reinstated properly by Chapter 191 of the Laws of 1934. The cases cited by the plaintiffs and relied upon by the court below were all decided during the period from 1900 to 1914 when the aggregate method was not a part of our tax statutes and they are therefore not authority in support of construing *R. S.* 54:3–19 and *R. S.* 54:4–48 *in pari materia. Ridgefield v. Goodday,* 65 *N. J. L.* 153 (*Sup. Ct.* 1900); *N. J. Zinc Co. v. Sussex Co. Board,* 70 *N. J. L.* 186 (*Sup. Ct.* 1903); *Union v. Hudson County Board of Taxation,* 77 *N. J. L.* 178 (*Sup. Ct.* 1908); *Township of Washington v. Mercer County Board of Taxation,* 85 *N. J. L.* 547 (*Sup. Ct.* 1914).

The plaintiffs also contend that their construction of the section in question is supported by the provisions of *R. S.* 54:4–52 which require the County Board to prepare and file a table of aggregates showing how the several tax rates are arrived at, and require that this table be "copied from the duplicates of the several assessors." *R. S.* 54:4–52, however, not only fails to sustain the plaintiffs' position but conclusively shows that the Legislature did not intend that the percentage valuation adjustments made on the equalization table should be entered on the tax lists and duplicates as an increase in the valuation of each individual parcel of property located within the taxing district thus having its valuation increased. *R. S.* 54:4–52 specifically requires that the table of aggregates include as separate items "(10) Amounts added for equalization under the provisions of sections 54:3–17 to 54:3–19 of this Title; (11) Amounts deducted for equalization under the provisions of said sections 54:3–17 to 54:3–19 of this Title," (these items appearing as columns 13 and 14 on the abstract of ratables and exemptions in the County of Passaic for the year 1949). On the other hand, amounts added or deducted for equalization under the provisions of *R. S.* 54:4–46 to 47 are not required to be separately enumerated. There can be but one explanation of the different treatment here given

valuation adjustments made under the two tax equalization methods; namely, that *R. S.* 54:4–48 requires changes in valuation made as a result of the individual equalization method to be entered on the tax duplicates and that these changes are therefore reflected in Item (4) which enumerates "The total value of the land and improvements assessed;" but that *R. S.* 54:4–48 does not require changes in valuation made as a result of the aggregate method to be entered on the tax duplicates, for, if that were done, these changes would be reflected in both Item (4) and Items (10) or (11) and thus would cause Item (12) of the table of aggregates, which shows the "net valuation on which county, state and state school taxes are apportioned," to be over or understated.

In order, therefore, to give effect to all the sections of the tax statute it is necessary to hold that the Legislature intended to have the aggregate method provide for an equalization of real property valuations as among taxing districts solely for the purpose of apportioning to each district its fair share of the county tax burden and to have the individual assessment method provide the only basis for equalizing the county and local tax burden as among individual property owners, whether holders of real, second-class railroad, or personal property, within the same taxing district. Superficially it would appear that the tax statutes as thus interpreted will result in the owners of second-class railroad property and personal property bearing a greater share of the tax burden than they would if the statutory equalization procedure were otherwise. But such is not necessarily the case and the figures used by the plaintiffs to illustrate their plight are misleading. Indeed, it is far more logical to assume that the inequalities are less under the procedure followed by the County Board than under the procedure advocated by the plaintiffs. It is rational to assume that the local assessors in each district valued all classes of property at the same percentage of true value, but it does not accord with experience to assume that the same local assessors assessed the property within their district at the same percentage of value as the local assessors in another

·district assessed the property within their district. The aggregate method of equalization is well designed to eliminate inequalities among districts and the individual method to ·eliminate inequalities within districts. But if the aggregate method of equalization in valuations be used not only to apportion county taxes among the districts, but also to change the assessed value of the real property within a district for the purpose of apportioning a district's total tax burden among its property owners, then the real property owner will have the valuation of his property adjusted without the valuations ·of second-class railroad and personal property being likewise adjusted, even though originally all classes of property within the district had been assessed at the same percentage of true value. Thus under the construction contended for by the plaintiff taxing districts a real property owner actually would bear more than his proper share of the district tax when all real property valuations in the district were increased and actually would bear less than his proper share of the district tax when all real property valuations were reduced. Accordingly the inequalities the plaintiffs contend exist under the procedure followed by the County Board are more imaginary than real.

But even if inequalities should result from the procedure followed by the County Board, that fact alone is not sufficient to overcome the clear legislative intent as to how the tax ·statutes should operate. It is well recognized that absolute ·equality in taxation is a practical impossibility and that the Legislature in setting up taxing procedures is not held to a standard of perfection. It is inevitable that there will be ·some inequalities under the present tax statutes whatever the determination of this appeal, since the aggregate method of tax equalization among districts only permits the adjustment of real property valuations, while the individual method is the only one by which the valuation of second-class railroad property or personal property can be revised and equalized.

The argument that a real property owner by the procedure followed by the County Board is deprived of a right to appeal

the increase in assessment he would have had if a different procedure had been followed is not in our judgment sufficient to overcome the reasoning which indicates that it was not the legislative intent that *R. S.* 54:4–48 be applicable to the aggregate method. The question of the real property owner's right of appeal, moreover, is not before the court, for there has been no showing, other than hypothetically, that any real property has been assessed in excess of true value or would have been so assessed had the 10% increase been reflected in the tax duplicates.

█ █ For the reasons stated we are of the opinion that *R. S.* 54:3–19 and *R. S.* 54:4–48 are not *in pari materia* and that the equalization procedure followed by the County Board was in accordance with the legislative intent as expressed in the tax statutes. Because of this disposition of the first question presented on the appeal it is unnecessary to answer the second question as to whether or not the Appellate Division took the proper steps under the statute to correct the alleged error of the County Board.

The judgment below is reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For affirmance*—None.