THE DELAWARE, LACKAWANNA AND WESTERN RAIL-
ROAD COMPANY, PLAINTIFF-RESPONDENT, v. AARON
K. NEELD, DIRECTOR, DIVISION OF TAXATION IN
THE DEPARTMENT OF THE TREASURY, STATE OF
NEW JERSEY, CITY OF HOBOKEN, CITY OF JERSEY
CITY, CITY OF NEWARK AND TOWN OF SECAUCUS,
DEFENDANTS-APPELLANTS.

Argued October 29, 1956—Decided March 11, 1957.

*Mr. John F. Crane,* Deputy Attorney-General, argued the cause for the appellant Aaron K. Neeld, Director, Division of Taxation (*Mr. Grover C. Richman, Jr.,* Attorney-General, attorney).

*Mr. Herbert H. Fine* argued the cause for the appellant City of Hoboken.

*Mr. Leo Rosenblum* argued the cause for the appellant City of Jersey City (*Mr. James A. Tumulty, Jr.,* Corporation Counsel, attorney).

*Mr. Augustus Nasmith* argued the cause for respondent.

*Mr. Vincent P. Torppey,* Corporation Counsel, and *Mr. Edward A. Smarak* joined in the brief as attorneys, respectively, for the City of Newark and Town of Secaucus.

*Mr. James Rosen,* by leave of court, submitted a brief on behalf of the Township of Weehawken, as *amicus curiae.*

The opinion of the court was delivered by

HEHER, J.   In purported compliance with the mandate of *L.* 1952, *c.* 229, *N. J. S. A.* 54:29A–17, the defendant

Director of the State Division of Taxation, some time prior to December 10, 1955, determined the "true value" of Class II railroad property of the plaintiff Delaware, Lackawanna and Western Railroad Company situate in the cities of Hoboken, Jersey City and Newark and the Town of Secaucus, as of January 1, 1955, for the assessment of the 1956 tax; and the valuations were later sustained by the Director after hearing held under *N. J. S. A.* 54:29*A*–18 pursuant to petitions for review interposed by Lackawanna and the several defendant municipalities.

Lackawanna's petition for review charged that the assessments at true value were "excessive" and "not according to the same standard of value" governing the assessment of other real property within the municipalities, and the municipalities severally complained in their petitions that the valuations of Lackawanna's Class II real property were below true value.

In addition to the assessing function, the Director is required, *L.* 1954, *c.* 86, *N. J. S. A.* 54:1–35.1, on or before October first in each year, to promulgate a "table of equalized valuations to be used in the calculation and apportionment of distributions pursuant to the State School Aid Act of 1954," *N. J. S. A.* 18:10–29.30 to 18:10–29.48. "True value" for the purposes of the act, *L.* 1954, *c.* 86, *N. J. S. A.* 54:1–35.3, "shall be deemed to be valuation at current market prices or values, determined in such manner as the director may, in his discretion, select"; and he is directed to "determine the ratio of aggregate assessed to aggregate true valuation of real estate of each taxing district"; and he "may make such determination by reference to the county equalization table whenever he is satisfied that the table has been prepared according to accepted methods and practices and * * * it properly reflects true value or a known percentage thereof for the several taxing districts in the county," and "with respect to any and all taxing districts, may use the assessment ratios reported in the Sixth Report of the Commission on State Tax Policy (Trenton, 1953)" and "consider such other assessment ratio studies as may be available";

and he "may make such further and different investigations of assessment practices as he may deem necessary or desirable for the establishment of the assessment ratios required by this act."

The equalization table promulgated by the Director October 1, 1955, pursuant to this statute, as adjusted January 6, 1956 by the Division of Tax Appeals, certifies the "average" ratios of assessed to true value in the given municipalities: Hoboken, 70.80%; Jersey City, 62.61%; Newark, 52.51%; Secaucus, 30.54%. These ratios were determined by an analysis of sales of real property in the several taxing districts between July 1, 1954 and June 30, 1955, related to the assessments made by the local assessing authority.

At a hearing of the petition for review involving Lackawanna's Jersey City property, held January 18, 1956, the Director declared, in response to questions put by counsel, that he had assessed Lackawanna's Class II property in Jersey City "at true value on the basis of the best information available to us for the purpose of determining assessments at true value"; that he conceived it to be his duty to "assess Class II railroad property according to full true value," and he was not at liberty to "apply the average ratio as promulgated in [his] Table of Equalized Valuations for 1955, either the original figures or the corrected figures," and relief from "any alleged discriminatory assessment which may result by the application of that general principle" could come only from the "Division of Tax Appeals or the court." And he said that "we will not apply those ratios * * * to any railroad in any taxing district."

And thereupon, January 20, 1956, before the time had arrived for the scheduled hearings concerning the assessments made in the other municipalities, this action was begun by the filing of a complaint, in which Hoboken, Jersey City, Newark and Secaucus were joined with the Director as defendants, alleging that the Director had failed in the performance of his duty to assess Lackawanna's Class II real property within the several municipalities "* * *

according to the same standard of value and according to the common ratio employed in levying assessments * * *," and thus the assessment "at true value" constituted undue discrimination in violation of the 1947 State Constitution, *Article* VIII, *Section* I, *paragraph* 1, and the Federal Constitution as well, and seeking judgment affirming and declaring the Director's "power and duty to make his initial valuations, to determine and correct his initial valuations and to make his final assessment" of Class II railroad property, for the purpose of assessing the 1956 tax, "according to the average ratio of assessed to true value employed in levying assessments on other real property located within" the respective municipalities, and "at less than true value, when necessary to prevent discrimination," and commanding the Director to "make his final assessment" in the several municipalities according to the ratios given in his promulgated equalization table.

The complaint was later amended to include a count charging the intentional assessment of real property within the defendant municipalities contrary to *R. S.* 54:4–1.

All defendants moved for summary judgment upon these grounds: (a) the Director has no jurisdiction to assess Class II railroad property at less than true value; and (b) Lackawanna had not exhausted its administrative remedies. Lackawanna countered with a motion to amend the complaint as indicated *supra,* and for summary judgment upon the ground that there was no "genuine issue of fact as to any material fact," and it was entitled to prevail as a matter of law. Defendants' motion was denied; and the cross-motion was granted.

The judgment affirms that "there are no essential facts in dispute"; that the Division Director "has the power and duty to determine and correct his initial valuations and to make his final assessment" of Class II real property "according to the average ratio of assessed to true value employed in levying assessments on other real property located within [the] defendant municipalities," and "at less than true value, when necessary to prevent discrimination," and the refusal

so to do contravened the cited provision of the 1947 State Constitution and the Fourteenth Amendment, and enjoins the Director to act accordingly and to make the "final assessment" of the given property "at the average ratio of assessed to true value" in the several municipalities "as he has already determined exists with respect to other real estate" in these taxing districts, "and as set forth in the Table of Equalization Valuations promulgated" by the Director October 1, 1955, pursuant to *N. J. S. A.* 54:1–35.1 *et seq.,* "as corrected by the Division of Tax Appeals," *i. e.,* according to the percentages of true value in each such municipality set forth *ante.*

The case is here by our certification of the joint appeal taken by the defendant Division Director and the four municipalities.

It is assigned for error that the Director "has no authority under the statute or the Constitution to assess second-class railroad property at less than what he conceives to be its true value"; that "(d)iscrimination is a question of fact and this issue should not have been determined by summary judgment"; that the "sales analysis is permissible only for the aggregate study required to be made in connection with the distribution of state school funds," and "true value" cannot be found "merely by a study of sales"; and the action should be dismissed for failure to exhaust the administrative remedy.

The argument *contra* is that the "constitutional mandates require and *R. S.* 54:29A–18 authorizes the Director to assess Class II railroad property at less than true value when necessary to prevent discrimination," citing *Baldwin Construction Co. v. Essex County Board of Taxation,* 16 *N. J.* 329 (1954) ; that the "uncontroverted facts established discrimination by the Director, as a matter of law," and "there were no genuine issues as to the material facts," and "there was no adequate administrative remedy"; and, finally, that the "Director's ratios were conclusive upon him as a matter of law," and Lackawanna "is entitled to reduction to the common ratio found by the Director."

■ The Director's reviewing jurisdiction under *L.* 1948, *c.* 40, *N. J. S. A.* 54:29A–18, comprehends the correction of undue discrimination by reducing his own assessment to less than true value where necessary to achieve the equality of treatment and burden secured by constitutional precept. "Any taxpayer * * * claiming that error has been made in the [Director's] valuation may * * *" have a review of the "valuations," and the Director is enjoined to hold a hearing accordingly and to "review the valuations" of which complaint is made, and "make his determination thereon and correct the same as shall appear just * * *."

■ All real property and tangible goods and chattels are subject to taxation at true value. This, by force of *R. S.* 54:4–1, as amended, derived from a measure implementing in terms the amendment to the 1844 Constitution adopted in 1875, *Article* IV, *Section* VII, *paragraph* 12, ordaining that property be assessed for taxes "under general laws, and by uniform rules, according to its true value." The 1947 Constitution, *Article* VIII, *Section* I, *paragraph* 1, modified the terms of the formula: "Property" is required to be assessed for taxation "under general laws and by uniform rules"; and "All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value," and "taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district." Yet the basic concept is the same.

■ As said in *Baldwin,* the dominant principle of the new constitutional mandate is equality of treatment and burden; and this was of the essence of the old constitutional provision as well. The standard of true value is but a means of achieving uniformity and equality, the predominant consideration in the distribution of the tax burden in virtue of the basic guaranties of due process and the equal protection of the laws. Were the rule of the State Constitution radically different in attribute and quality, the Fourteenth Amendment would prevail, for the equality of treatment thereby secured protects the individual from

state action making for discriminatory imposts "not imposed on others of the same class"; and the constitutional requirement "is not satisfied if a State does not itself remove the discrimination, but imposes on him against whom the discrimination has been directed the burden of seeking an upward revision of the taxes of other members of the class." *Hillsborough Township v. Cromwell,* 326 *U. S.* 620, 66 *S. Ct.* 445, 90 *L. Ed.* 358 (1946).

 Where one or a few of a class of taxpayers are assessed at the full true value of their property, according to a constitutional or statutory mandate, and the rest of the class are intentionally assessed at a percentage of true value, in violation of the law, the "right of the taxpayer whose property alone is taxed at 100% of its true value is to have his assessment reduced to the percentage of that value at which others are taxed, even though this is a departure from the requirements of the statute"; where "it is impossible to secure both the standards of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law." *Sioux City Bridge Co. v. Dakota County,* 260 *U. S.* 441, 43 *S. Ct.* 190, 67 *L. Ed.* 340, 28 *A. L. R.* 979 (1923). See also *Iowa-Des Moines National Bank v. Bennett,* 284 *U. S.* 239, 52 *S. Ct.* 133, 76 *L. Ed.* 265 (1931); *Cumberland Coal Co. v. Board of Revision,* 284 *U. S.* 23, 52 *S. Ct.* 48, 76 *L. Ed.* 146 (1931).

*R. S.* 54:3–13, whose source was *L.* 1906, c. 120, enjoins the county board of taxation to "secure the taxation of all property * * * at its true value, in order that all [taxable] property * * * shall bear its full, equal and just share of taxes." Here we have the animating principle of equality of burden.

 But mathematical precision in the valuation of property for taxation is not requisite, nor is it attainable. Absolute equality is impractical. The design of the equal protection clause of the Fourteenth Amendment, related to the particular field, is protection against intentional systematic discrimination, and thus to insure the essence of

the basic right of equality; mere errors of judgment are not enough; there "must be something more,—something which, in effect, amounts to an intentional violation of the essential principle of practical uniformity." *Sunday Lake Iron Co. v. Wakefield Township,* 247 *U. S.* 350, 38 *S. Ct.* 495, 62 *L. Ed.* 1154 (1918); *Sioux City Bridge Co. v. Dakota County,* cited *supra.*

The ruling principle is embodied in *R. S.* 54:3–21, as amended by *L.* 1945, *c.* 125, providing for an appeal to the county board by a taxpayer "feeling aggrieved by the assessed valuation of his property, or feeling that he is discriminated against by the assessed valuation of other property in the county, or a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district, or by the assessed valuation of property in another taxing district in the county, * * *," and in *R. S.* 54:4–46, 47, as amended by *L.* 1947, *c.* 413, empowering the county board, "after investigation," to "revise, correct and equalize the assessed value of all property in the respective taxing districts, increase or decrease the assessed value of any property not truly valued," assess omitted property "at its true value," and "in general do everything necessary for the taxation of all property in the county equally and at its true value."

In *Gibraltar Corrugated Paper Co. v. North Bergen Township,* 20 *N. J.* 213 (1955), we held that under *R. S.* 54:3–21, *R. S.* 54:2–35, and *R. S.* 54:2–39, all as amended, the county boards and the State Division of Tax Appeals have jurisdiction to remedy discriminatory assessments at the instance of the aggrieved taxpayer, by reducing the assessment, even though then at true value, to accord with the "common ratio employed in levying assessments throughout the same taxing district," and thus to fulfill the principle of equality in treatment and burden, "which by virtue of its constitutional foundation must override the statutory standard where the latter has not been manifested in fact to achieve equality." Justice Burling said that the "fact of discrimination against a complainant taxpayer" is within

the competency of the state agencies, and "cannot be erased for lack of a remedy whether it occurs above or below the true value standard"; "* * * the taxing authorities may *equalize* assessments at a level below true value and, this being so, the same authorities must reduce *individual* assessments where equality can only be obtained at a point falling short of the statutory standard."

And it was there pointed out that "Equalization of the aggregates, although related by necessity to individual assessment, operates in a different mathematical sphere"; its "purpose is to distribute the county burden equally among the taxing districts, and to achieve this it is first necessary to revise the individual aggregates submitted by the districts to a figure that will reflect a common ratio of 100% of true value," and whether the "burden is then distributed upon a basis of 50% or 100% of true value will not undermine the requisite of equality, for equality has already been established according to the statutory direction so far as the districts within the county are concerned," referring to *R. S.* 54:3-17.

*R. S.* 54:3-17 directs that each county board of taxation shall annually ascertain and determine, "according to its best knowledge and information," the "general ratio or percentage of full value at which the real property of each taxing district is assessed according to the tax lists laid before the board," and prepare an "equalization table" showing the assessed valuation of the real property in each district, "the ratio or percentage, if any, by which the assessed valuation should be increased or decreased in order to correspond to true value, and the true value of the real property within the district as determined by it"; and it was said in *Gibraltar* that although the "equalization process does not work individual revision to true value," citing *Borough of Totowa v. Passaic County Board of Taxation,* 5 *N. J.* 454 (1950), "it is indicative of the legislative intent that equality is to be achieved though assessments fall below the standard required," and so the "statute itself reflects the rule of equality as a predominant factor," the principle approved

in *Baldwin,* and a taxpayer "feeling discriminated against by the assessed valuation of other property in the district in comparison with his own assessment" may appeal to the county board, *R. S.* 54:3–21, as amended, and the board's judgments are reviewable by the Division of Tax Appeals, *R. S.* 54:2–35, as amended, or *R. S.* 54:2–39, as amended, the Division to "give such judgment therein as it may think proper."

The Director's statutory review, *N. J. S. A.* 54:29*A*–18, would be null were it bound by the "true value" standard in the exercise of the "corrective" process, even though such course would deny the taxpayer's constitutional right of uniformity and equality, the basic principle of the "true value" formula. Requiring adherence to the full value concept in that context would be a contradiction in terms, a construction repugnant to reason and logic. The quality of the remedial authority given to the Director and the appellate administrative tribunals to this end must needs be the same; otherwise, the proceeding would be in vain. The Director is enjoined to make such determination "as shall be just"; and the implicit meaning of this is accommodation to the standard followed by the local assessors where uniformity is imperative to achieve the constitutional equality of treatment and burden.

But Lackawanna's argument to sustain the judgment proceeds on the fundamental misconception that the sales-assessment ratios found by the Director for the apportionment of the moneys provided for state school aid under *N. J. S. A.* 54:1–35.1, are "competent proof in an individual discrimination case," and "conclusive upon him as a matter of law," citing *City of Passaic v. Passaic County Board of Taxation,* 18 *N. J.* 371 (1955).

There is an essential difference between a common or uniform assessment ratio of true value applicable to all alike in the same class and the "average" assessment ratio of true value. The "common" ratio imports general equality in the incidence of the tax, the equality of burden that is of the essence of constitutional uniformity; the "average" ratio

is the arithmetical mean or median of varying ratios of true value, necessarily making for unequal proportions of value and thus for inequality of treatment and burden in the apportionment of the tax as between the several property owners. *Switz v. Township of Middletown,* this day decided, 23 *N. J.* 580 (1957).

The sales-assessment ratio data do not provide the basis for an intra-municipal true value assessment of individual parcels of real property. As observed in *Switz,* Director Neeld has made abundantly clear the inherent probative limitations of this process in an article published in *New Jersey Municipalities,* January 1, 1956, *"The Gibraltar Case—Full True Value Assessments"*: "Sales-assessment ratio data," he there affirmed, "are usable for two basic purposes: a—To test the quality of the assessment roll of a district, and b—To approximate the aggregate true value of real property within a district for various apportionment purposes," and "are not intended nor considered to be useful for the purpose of making full value assessments against specific parcels of real property"; since the result is merely an "average ratio of assessed to true value of all the properties on the roll which necessarily means that there are many with ratios far above and many with ratios below this average," and while such data "will have value in aiding the administrative agencies to determine the existence of inequalities within a district, and may even assist the courts in dealing with cases involving alleged discrimination, nevertheless, such data cannot be employed as a substitute for the expertness, judgment and discretion required in formulating an original assessment for each parcel of property on a full true value basis."

The sales-assessment ratio data have been used for equalization by the aggregate method for the apportionment of county taxes among the municipalities, and the proportional distribution of state school aid. See *Gibraltar Corrugated Paper Co. v. North Bergen Township, supra; City of Passaic v. Passaic County Board of Taxation,* 18 *N. J.* 371 (1955); *Borough of Totowa v. Passaic County Board of Taxation,*

*supra.* This has to do with the inter-municipal sharing of the county tax burden and state school benefits.

Yet this is not to say that sales-assessment data are conclusive of equalization for all such statutory purposes. As noted *ante, R. S.* 54:3–17 directs that the county board shall annually determine, "according to its best knowledge and information," the "general ratio or percentage of full value" at which the real property in each taxing district is assessed, and prepare an "equalization table" accordingly. The "general ratio" is the rate most common, that generally obtaining. But there is no occasion to pursue the inquiry here.

And it is a corollary of the foregoing that the particular issue is peculiarly within the province of the administrative tribunals; and there is no occasion for judicial intervention before the exhaustion of the administrative remedies. They are wholly adequate, and the normal course in the circumstances. There is no discernible consideration of justice demanding that the administrative agencies be ousted of the jurisdiction for which they are specially fitted. The adjudicative function of the Division Director is established. The inquiry now concerns agency expertness and discretion, in the main. See *Nolan v. Fitzpatrick,* 9 *N. J.* 477 (1952); *Ward v. Keenan,* 3 *N. J.* 298 (1949); *Swede v. City of Clifton,* 22 *N. J.* 303 (1956).

We reserve the question of interest for argument after the basic issue shall have been determined.

The judgment is affirmed insofar as it declares and adjudges the Director's jurisdiction to "correct his initial valuations, and to make his final assessment" of Lackawanna's Class II real property "at less than true value, when necessary to prevent discrimination," but is otherwise reversed, and the cause is accordingly remanded to the Director for further proceedings consistent with this opinion.

VANDERBILT, C. J. (concurring). I come to the same ultimate conclusion as the majority in this case because the present state of our law is that unlawful discrimination

against a taxpayer may be remedied by the courts or by the proper administrative agency even though accomplished below the standard of true value prescribed by law and even though to do so it is necessary to disregard the statutory mandate requiring assessment at true value—all because we believe in the dominance of the fundamental principle of equality, *Baldwin Construction Co. v. Essex County Board of Taxation*, 16 *N. J.* 329 (1954); *Gibraltar Corrugated Paper Co. v. North Bergen Township*, 20 *N. J.* 213 (1955); see also *City of Passaic v. Passaic County Board of Taxation*, 18 *N. J.* 371 (1955). While it is nevertheless the law, I feel it necessary to indicate that so long as there are means by which uniformity of tax treatment and equality in the imposition of the tax burden can be achieved without sacrificing the statutory direction to assess all property at true value, every power must be exerted toward that end.

The fact that it has been necessary to effectuate a remedy in cases where at one particular stage strict compliance with the statutory mandate would work the evil sought to be avoided and would be contrary to the "just and ultimate purpose of the law," *Sioux City Bridge Co. v. Dakota County, supra,* 260 *U. S.* 441, 43 *S. Ct.* 190, 67 *L. Ed.* 340 (1923), is not to say that the continued and universal violation of the statutory command to assess at true value is to be condoned. On the contrary, as is now conceded by all of the members of this court, *Switz v. Township of Middletown,* 23 *N. J.* 580 (1957), the statutory scheme contemplates that equality of treatment and burden be accomplished by local and initial assessments at true value. Had this been the accomplished fact here, there would have been no need for the present proceedings.

We are rapidly approaching the point where concerted and intentional efforts to disregard the positive commands of our law will no longer be tolerated merely because time appears too short or the size of the task appears too great to remedy the situation, *Switz v. Township of Middletown, supra.* So long as the law remains in its present state, a system founded upon the existing statutory provisions must

be enforced and *all* property assessed at the same standard of value—its true value.

VANDERBILT, C. J., and JACOBS, J., concurring in result.

*For affirmance and reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING and JACOBS—5.

*For affirmance*—Justice WACHENFELD—1.