122 N.J. Super. 446 (1973)
300 A.2d 850
CONTINENTAL PAPER COMPANY, PETITIONER-RESPONDENT,
v.
VILLAGE OF RIDGEFIELD PARK, RESPONDENT-APPELLANT. ALFORD INDUSTRIES, INC., PETITIONER-RESPONDENT,
v.
VILLAGE OF RIDGEFIELD PARK, RESPONDENT-APPELLANT. SIMKIN INDUSTRIES, PETITIONER-RESPONDENT,
v.
VILLAGE OF RIDGEFIELD PARK, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 1973.
Decided February 16, 1973.
*448 Before Judges FRITZ, LYNCH and ACKERMAN.
Mr. Martin T. Durkin argued the cause for appellant (Mr. Christian Bollermann on the brief).
*449 Mr. Richard Aloysius Walsh argued the cause for respondents (Messrs. Silverman, Bergstein & Walsh, attorneys).
The opinion of the court was delivered by LYNCH, J.A.D.
The Village of Ridgefield Park (village) appeals from judgments of the Division of Tax Appeals reducing the 1969 and 1970 assessments upon certain real property owned by taxpayers of the community.[1] The sole ground of the village's complaint here is that the Division, after reducing the assessments on the basis of their true value, imposed an additional reduction of 15%, on the asserted authority of the decision in In re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21 (1961), for alleged "discrimination."
In Continental's petition of appeal filed with the Bergen County Tax Board for the tax year 1969, the only reason alleged for reduction of the assessment was "Not true value." In the petition to the Division of Tax Appeals for the same year, the allegation of aggrievement was that "the said assessment is in excess of its true value" and the prayer was that the assessment "be reduced to the true value of the property." Thus, in neither tribunal was there an allegation of "discrimination," remediable under Kents. Because the issue was not raised, the claim of "discrimination" was not properly cognizable by the Division and its action in applying the 15% reduction on such basis as to the tax year 1969 is reversed. Cleff Realty Co. v. Jersey City, 41 N.J. Super. 465 (App. Div. 1956), certif. den. 23 N.J. 58 (1956); Matawan v. Tree Haven Apts. Inc., 108 N.J. Super. 111, 116 (App. Div. 1969).
*450 The following capsulizes that portion of the decision of the Division which sets the framework of the issue of discrimination for our consideration as to the year 1970.[2] The Division said:
A claim of discrimination has been made by the appellants. The allegation is based on Kents type discrimination and they request Kents type relief. The record shows that during the years 1969 and 1970, the Village of Ridgefield Park has been assessing at a common level of assessment which was less than 100 per cent. I find for that year the actual assessment was on the basis of 85 per cent of true value. I therefore find for the years 1969 and 1970 all of the assessments which have been determined here should be reduced by the sum of 15 per cent. [Emphasis added]
The "finding" that "for that [sic] year the actual assessment was on the basis of 85 per cent of true value" is somewhat obscure both as to "what year" was intended and as to whether it was a finding that the actual assessment of the subject property was at 85% of true value, or whether the finding referred to assessments generally. If the subject properties were indeed assessed at such percentage, there could have been no discrimination even on the Division's theory (i.e. that the "common level" was at 85%). To reach the issue presented, we shall construe the language upon the assumption that this finding was meant to assert that the "common level" was at 85% of true value. In any event, we hold that the Division erred in granting Kents relief on the record here.
In order to make out a case of actionable discrimination, these elements must be proved: (1) that the real property generally in the municipality was asssesed at less than true value; (2) what the common assessment level was, and (3) the true value of the subject property upon which the common level percentage would operate. Reading Co. v. *451 Woodbridge Tp., 45 N.J. 407, 426 (1965); Matawan v. Tree Haven Apts. Inc., supra, 108 N.J. Super. at 116; Feder v. Passaic, 105 N.J. Super. 157, 160 (App. Div. 1969). If there is no common level shown and there is none which the assessor is endeavoring to apply, and the assessment is substantially higher than the "average ratio" determined by the Director of Taxation, the "average ratio" may be applied under Kents, and the assessment reduced by that proportion. Matawan v. Tree Haven Apts. Inc., supra, 108 N.J. Super. at 116; Feder v. City of Passaic, supra, 105 N.J. Super. at 166.
As noted above, the Division's decision found that
* * * The record shows that during the years 1969 and 1970, the Village of Ridgefield Park has been assessing at a common level of assessment which was less than 100 per cent. I find for that year the actual assessment was on the basis of 85 per cent of true value * * * [Emphasis added]
There is no evidential support in the record for so much of this finding as concerns assessment at a common level less than 100%. Indeed, there was no testimony by taxpayers' experts as to a common level, and the assessor's uncontroverted testimony is that for his 12 years as assessor he has been assessing at true value.
Nor was there any showing that, as in Kents, there was no common level, toward the end that the average ratio from the Director's Tables might be enlisted.
The Division erred in equating the "average ratio," accepted by the assessor in his testimony for what it is and no more,[3] with a "common level."
*452 The "average ratio" is quite a different concept from "common level." In fact, the "common level" imports general equality in the incidence of the tax, and the "average ratio" necessarily makes for unequal proportions of value and thus for inequality of treatment and burden in the apportionment of the tax as between the several property owners. Delaware, Lackawanna and Western R.R. Co. v. Neeld, 23 N.J. 561, 573 (1957), and Switz v. Middletown Tp., 23 N.J. 580, 594 (1957).
In North Bergen Tp. v. Venino, 45 N.J. Super. 143 (App. Div. 1957), the Division of Tax Appeals attempted to apply *453 the "average ratio" of the Director and the Hudson County equalization table to correct what it deemed, because of said tables, a discriminatory assessment. Judge (later Justice) Francis said:
May the tables described be used as the sole reason for a finding of discrimination? And, where such tables are offered or used as the sole means of demonstrating discrimination against an individual property owner, may the average ratio of assessment to true value as shown therein be applied to the actual true value of the individual parcel of realty in order to achieve equality and eliminate discrimination? The answers to these questions must be in the negative. Such treatment fails to take cognizance of the essential difference between the concepts of average ratio of assessment to true value for equalization table purposes and common ratio of assessment. The average ratio achieved in the statutory equalization process is the arithmetical mean of the varying percentages of true value applied by the local assessor in assessing properties in the taxing district. A common ratio signifies that the same standard of percentage of value is used in assessing each property in the district. If the same standard or common ratio were applied uniformly in all municipalities throughout the State, there would be no need for equalization tables (assuming, of course, that true value was ascertained honestly and in good faith), for then there would be no discrimination. Obviously, therefore, application of the average ratio, ascertained for purposes of equalizing the county tax burden among municipalities or for purposes of allocation of school aid, cannot bring about equality of tax burden among individual property owners within a given municipality. A common level of individual assessment cannot be achieved by that means alone. [At 147; emphasis added]
Concededly, Venino was decided before Kents, which did apply the "average ratio" on the facts there presented. But, as will be seen below, the record here does not comport with that in Kents. Venino was one of the cases cited in Kents (34 N.J. at 26) as an instance where efforts had erroneously been made to prove "common level" by relying on the average ratio. The court in Kents exposed the limitation of the "average ratio," saying:
The question is whether the average ratio thus determined may be used to deal with the problem of intramunicipal inequality. If the sales data used to find the ratio in fact revealed some percentage of true value about which the bulk of individual assessments *454 tended to cluster, one might accept that percentage as the common level of assessments. But the underlying sales material may reveal no such central figure, but rather widely varying assessment ratios within each of the four classes of property referred to above. [34 N.J. at 27]
After pointing out that the sales upon which the average ratio is based ranged, in that case, from 2.25% to 88% of the assessed value for land and comparable widely disparate percentages for residential and "other property," the court demonstrated the irrelevance of the "average ratio" to "common level," saying:
It is clear the average ratio is not a handy tool with which one seated at a desk can bring all assessments to full true value. The reason, of course, is that since the individual assessments vary within a wide range, the inequities would be aggravated if all assessments were brought to full true value upon the assumption that they reflect a uniform percentage of that value. Switz v. Middletown Twp., supra (23 N.J., at p. 604); Delaware, Lackawanna and Western R.R. Co. c. Neeld, supra (23 N.J., at p. 574). Nothing short of complete revaluation, parcel by parcel, plus appropriate measures to keep the rolls current can achieve equality. [at 27].
Nevertheless, in Kents the court strove to determine whether the average ratio may ever be used to reduce an assessment substantially above it. And it then, with several caveat references to the inherent weaknesses of the concept, laid down the limited circumstances where, as a last desperate measure to avoid inequality of treatment, reliance could be placed on the "average ratio." Chief Justice Weintraub, speaking for the court, said:
Where, as here, the record of sales indicates there is no common level for all or any class of real property and the assessors disavow any effort to achieve one, the average ratio should be deemed sufficient evidence of the level to which reduction should be granted in the absence of circumstances indicating that the average should be modified for that purpose. The trier of the facts may properly consider any weakness which may appear as, for example, a paucity of sales in the municipality concerned or some imbalance caused by unusual experience. [at 31].
*455 The court in Kents then noted that the record in that case justified the use of the average ratio. The proofs demonstrated there was no common level and the assessors disavowed any effort to achieve one. The sales underlying the average ratio were substantial, the assessments of new motels were "substantially" below the average ratio and the assessments of the property involved "substantially" exceeded the ratio. Thus it was that the court said: "* * * until some better technique appears or some other suitable one is provided by statute, we are satisfied to utilize the average ratio in cases such as the one before us" (at 33; emphasis added).
That is not the situation here. In 1963 a revaluation was made in Ridgefield Park. The assessor's testimony here was that, while the assessments remained the same through 1970, they were "uniform" throughout the municipality. There was an effort by the assessor to maintain assessments at a common level of true value and a revaluation was again made for the tax year 1971. Moreover, the Division here gave no consideration to the inherent value of the "average ratio" in Ridgefield Park, or its possible weaknesses. Nor was there any showing that the assessment of the subject property was "substantially" higher than the "great bulk" of assessments in the municipality. Uniformity is the desideratum, inequality of tax treatment the evil to be prevented. There is no evidence in the record here to negate the former or to demonstrate the latter. The true thrust of Kents is at "unequal treatment" (34 N.J. at 31). We find none of that here.
The judgment of the Division is reversed insofar as it reduced the assessments by 15% for reasons of "discrimination" for the tax years 1969 and 1970. The matter is remanded for entry of judgment in the Division for those years in accordance with views herein expressed.
NOTES
[1] The property was owned by the Continental Paper Company (Continental) during the tax year 1969, and for the tax year 1970 part of it was owned by Alford Industries, Inc. (Alford), and part by Simkin Industries (Simkin). Except where specific reference is made to the various owners, they shall be referred to as "the taxpayers."
[2] The merits of the claim of discrimination likewise would be applicable to the tax year 1969 if "discrimination" had been properly raised in the petitions of appeal.
[3] So far as pertinent this testimony was as follows:

Q. All right. Now are you aware of the Table of Equalized Valuations as promulgated by the Division of Taxation, Department of the Treasury for the subject years 1968 and 1969?
MR. DURKIN: Your Honor, we'll admit it.
A. Yes.
MR. WALSH: You admit the average ratio as applied by the Director of the Division of Taxation?
THE WITNESS: The average ratio is the result of the selling prices of all the properties in the Village, and those that didn't sell would have the same treatment as those that sold. It would be no different.
Q. Well, if I told you, assuming for the purposes of this hearing, that the Village of Ridgefield Park for the year 1969 had an average ratio of sale to true value of 8.99% [sic] would you agree with that?
A. I would agree with it.
Q. Now, for the year 1968, would you agree that the average ratio was 83.53%?
A. The ratio based on the selling prices of the properties that were used in this study was 83%.
Q. Now, if you assessed the subject premises at 100% of true value, do you believe that there was some discrimination in connection with that assessment in connection with the average ratio?
A. I misunderstood your question before. All the properties in the Village were assessed at a hundred per cent in 1963, none of the values have changed. The assessment stayed for eight years in a row. So if the sales ratio based on a few of the selling prices we had reflected that in that space of time the ratio went from a hundred to eighty-three, then I must say that the value that I have on that property record card is 83%, and not 100%.
Q. You say it is not 100% now?
A. Yes, sir.
MR. WALSH: That's all.
REDIRECT EXAMINATION BY MR. DURKIN:
Q. Mr. Howard, isn't this ratio change due to inflation?
A. That's right.
Q. And if we had a depression couldn't it react the opposite way?
A. It sure could.
Q. You have in no way attempted to treat any of the properties in Ridgefield Park but in a uniform manner?
A. All uniformly. [Emphasis added]