State, Weehawken T'w'p, Pros., v. Roe, Clerk Hudson Co. Freeholders.

---

THE STATE, THE TOWNSHIP OF WEEHAWKEN, PROSE-CUTOR, v. CHARLES J. ROE, CLERK OF THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON.

1. When the board of assessors meet under *pl.* 95 of the tax act, (*Nix. Dig.* 953,) the township to whose quota of tax an addition is proposed to be made, cannot offer evidence to rebut any alleged inequality. The assessors must determine upon their own knowledge the existence of any inequality.

2. Before they can interfere at all with any duplicate, they must decide that the valuation contained in it is relatively less than the value of other property in the county, and then they correct it as to themselves shall seem just and proper.

On *certiorari.*

Argued at June Term, 1872, before Justices DALRIMPLE, DEPUE and VAN SYCKEL.

For the plaintiffs, *I. W. Scudder* and *J. Vanatta.*

For the defendant, *Jacob Weart.*

State, Weehawken T'w'p, Pros., v. Roe, Clerk Hudson Co. Freeholders.

The opinion of the court was delivered by

VAN SYCKEL, J.   The board of assessors of the county of Hudson, at their meeting in 1871, passed a resolution that the valuation of property made by the assessor of Weehawken township be raised two hundred per cent.   The *certiorari* in this case is prosecuted to test the validity of this resolution.

The case shows that the assessors of the several townships having met in pursuance of the statute, produced their respective duplicates, verified by oath as prescribed by section 12 of the act concerning taxes, passed April 14th, 1846.   (*Nix. Dig.* 953, *pl.* 94.)*

The assessor of Weehawken testifies, and his statements are not called in question by any counter testimony, that he presented his duplicate to the board, and his affidavit thereto was inspected and pronounced to be correct; that after the valuations for the several townships had been taken down by the clerks, one of the assessors moved that the valuation of the township of Weehawken be increased two hundred and fifty per cent.; some other person moved to increase it three hundred per cent., which was carried, but afterwards reconsidered and the increase fixed at two hundred per cent.; that there was no discussion in the board of assessors as to the propriety or impropriety of the increase; that the assessor of Weehawken stated his objections to such increase, but that there was no discussion in regard to the matter, no comparison of valuations made publicly in the board, and no reason whatever was assigned by any one for making the increase.

The power under which this action is sought to be upheld is found in the act before referred to, (*Nix. Dig.* 953, *pl.* 95,)† which provides " that the board of assessors, when met as aforesaid, shall compute and ascertain the whole value of real and personal estate after deduction of debts, to be taxed according to the value thereof contained in the duplicates of the several assessors, or estimated as aforesaid, and shall fix and adjust the proportion or quota of tax to be levied and collected in each township or ward in proportion to said value; *provided,* that if it shall appear to the assessors so met

* *Rev., p.* 1155, § 71.   † *Rev., p.* 1155, § 72.

as aforesaid, that the value of the property contained in any duplicate is relatively less than the value of other property in the county, they may, for the purpose of fixing and adjusting the said proportion or quota, and for that purpose only, add thereto such percentage as shall appear to them just and proper, but not otherwise."

The object of this section is to prevent inequality in the distribution among the several townships of the tax apportioned to the several counties.

It is insisted on the part of the relators that the board of assessors must base their action upon competent evidence, and that the township of Weehawken had a right to be heard by witnesses in defence of the proposed addition in burden of their tax payers. The statute will not bear this construction. No mode is provided for conducting such a proceeding, and it is manifest that such a trial, if entered upon, would be practically without an end. It would involve the taking of evidence and counter evidence as to the value of every piece of property in the county, besides the abatement to which every individual would be entitled for debts and non-taxables. It would require clear language to lead to the conclusion that the legislature intended to impose upon the board of assessors an inquiry so extended as this, because if it is competent to enter upon it at all by the production of witnesses, nothing but the will of the contending parties could arrest the pursuit of it to its minutest details. In fact, if it must be determined by competent evidence, nothing could be settled without sufficient testimony to support it, and that would inevitably lead to an examination in detail of all the values in the county. This would be an impracticable and unreasonable interpretation of the clause in question.

Our law-makers have presumed that assessors in the discharge of their functions will become acquainted with the values in their county, and by an interchange of views, be able to ascertain approximately, not accurately, the relative valuations, so that no apparent injustice will be done to any one township. This is all that was intended to be secured by the provision in question. If it shall appear to the board

from the knowledge which each one possesses, aided by that derived from his associates, that there is inequality, that inequality may be removed, according to their own best judgment, and nothing more. Before they can act at all, upon any duplicate, they must decide that the valuation contained in it is relatively less than the value of other property in the county, and then they correct it as to themselves shall seem just and proper. The act was designed to enable the board of assessors to remove, not arbitrarily to establish inequality, by permitting them to act in the premises without first having the sanction of their own judgment as a board, that a state of facts existed which authorized them to interfere at all.

The power conferred is a very broad one, and even with this slight safeguard thrown around its exercise, it is susceptible of very great abuse. If it shall, in its application, become oppressive, the only remedy is by appeal to legislation.

In the case now submitted, it does not appear that there was any comparison of views between the assessors, or any judgment formed by them that the valuation in Weehawken was relatively less than it should have been. So far as appears, the action complained of was arbitrary and oppressive, and not as appeared to them just and proper, and therefore, in my opinion, their resolution should be set aside.

CITED in *State, Inhabitants, &c., pros.,* v. *Anderson,* 9 *Vr.* 173.