BOROUGH OF LITTLE FERRY, A TAXING DISTRICT IN THE COUNTY OF BERGEN, PETITIONER-APPELLANT, v. BERGEN COUNTY BOARD OF TAXATION AND DIVISION OF TAX APPEALS IN THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, RESPONDENTS.

Argued March 14, 1955—Decided May 2, 1955.

*Mr. Alfred W. Kiefer* argued the cause for appellant (*Mr. Christian Bollermann* on the brief).

*Mr. Harold Kolovsky* argued the cause for respondents (*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey, attorney).

The opinion of the court was delivered by

BRENNAN, JR., J. The Borough of Little Ferry appeals from the dismissal by the Division of Tax Appeals of its complaint under *N. J. S. A.* 54:2–37 for the review, and correction and revision, of the 1954 equalization table promulgated by the Bergen County Board of Taxation. We certified the appeal of our own motion while the appeal was pending in the Appellate Division.

The judgment of the Division will be reversed and the cause remanded with direction to the Division to revise and correct the 1954 Bergen County equalization table in further proceedings pursuant to *N. J. S. A.* 54:2–37 conducted according to the principles more fully set forth in our decision filed herewith in *City of Passaic v. Passaic County Board of Taxation,* 18 *N. J.* 371 (1955).

The Bergen County Board of Taxation prepared a preliminary equalization table which was submitted to the local assessors and representatives of the local governing bodies at a meeting on January 25, 1954 called pursuant to *N. J. S. A.* 54:3–17. The table showed increases in the aggregates of real estate valuations appearing on the duplicates of 41 taxing districts, decreases in the aggregates of 6 municipalities, and no change in the aggregate of 23 taxing districts. The aggregate shown on the Little Ferry duplicate was increased $478,102, or 15% above the submitted aggregate of $3,187,350.

The presiding member of the board, Mr. Moss, addressed the meeting when it commenced. His statement shows that the board is fully aware of the nature of the equalization function and the reason underlying the requirement, and the board's duty in the premises. The statement correctly observes:

"This preliminary equalization table and the final table to be adopted by March 10th is not an order by the Board to assessors to increase or decrease valuations. The ratios or percentages shown on these tables are simply for the proper distribution of county tax— it does not mean that an assessor must increase or decrease the assessments in his books by such percentages. It is merely a math-

ematical operation to equitably distribute to every taxpayer a fair and just share of the county tax levy. The purpose of this table is just what we have so often told you—a means of bringing about an equalization of values for payment of county tax. *You as assessors know there are many districts in the county that have escaped paying a fair share of the county tax burden by keeping valuations at a low figure.*" [Emphasis supplied]

■ Mr. Moss also revealed that in the preparation of the table, "We have exerted every effort to comply with the instructions and suggestions of the State Director [of the Division of Taxation] and have used the best known sources in arriving at the table we have adopted." The error into which the board fell, at that meeting and at the several adjourned meetings held before the preliminary table was finally adopted on March 10, was in failing to disclose, and affording the local assessors and local representatives a fair opportunity to meet, the data obtained from the "best known sources" referred to. And the Division of Tax Appeals compounded the error in the proceeding before that body in acquiescing in the position taken by the Attorney-General that the county "board isn't to present facts to the taxing district. If the taxing districts have any objections they are to present them to the board. He is asking what factual data was presented by the county board. It should be the converse and the statute implies it to be."

■ For the reasons stated in *City of Passaic v. Passaic County Board of Taxation, supra,* it was the duty of the county board to lay before the meeting of January 25 the data underlying the determinations of average assessment ratios and to afford the taxing districts fair opportunity both for refutation of such data, and to present their own. A municipality has the right not only to challenge the ratio determined for it, but also, under *N. J. S. A.* 54:3–18, "at the first hearing * * * may object to the ratio or valuations fixed for any other district, but no increase in any valuation as shown in the table shall be made by the board without giving a hearing, after three days' notice, to the governing body of the taxing district affected."

The error was fatal to the proceedings and particularly unfortunate because the county board commendably undertook a comparison of 26,000 property sales in Bergen County in determining the average assessment ratios and in bringing them into equivalence on the basis of 25% of true value. This was not discovered, however, until upon the request of this court on the oral argument it was revealed to the Attorney-General and the attorney for the borough and the facts were made the subject of a stipulation filed with us as a supplement to the record. The stipulation states:

"* * * the percentages of true value as determined by the respondent * * * are based upon analyses of real estate transactions recorded in the Bergen County Clerk's office. The approximate selling price of various properties as calculated from revenue stamps appearing on deeds recorded from 1950 to 1953 was compared with the local assessment figures for the properties in question.

Equalization was primarily made on the basis of 25% of true value. True value in turn was determined in the main from recorded real estate transactions * * *. In addition, respondent engaged independent real estate appraisers to make spot check appraisals of various properties throughout Bergen County and also caused appraisals to be made on a spot check basis by its own employees. Such appraisals were utilized on a much more limited scale than the method of analyzing real estate transactions in the Bergen County Clerk's Office. It was the purpose of these appraisals to verify the accuracy of the latter method. The respondent also took into account information it acquired from various local tax appeals * * *.

The figures used by the State Director are based on an analysis of 3,000 property sales in Bergen County as compared to 26,000 property sales considered by the Bergen County Board of Taxation."

In the performance of the legislative or *quasi*-legislative function of equalizing aggregates, boards charged with the duty may properly consult and rely upon official records of real estate transactions and draw inferences of true values of properties from revenue stamps on recorded deeds, *cf, N. J. S. A.* 54:3–22, or the amounts of mortgages on such properties, and may consult appraisals in the files of mortgage lending institutions or of such agencies as the Veterans Administration or the Federal Housing Administration. And the sampling need be merely reasonable in light of the pur-

pose and not exhaustive. Such are the techniques used by men in the conduct of ordinary affairs. The boards may also, and should, take official notice of and give consideration to the real estate average assessment ratios for the municipalities of the county as determined by the Director of the Division of Taxation pursuant to *N. J. S. A.* 54:1–35.1 *et seq.* Precision in valuations is not requisite, *State, Weehawken Twp., Pros., v. Roe,* 36 *N. J. L.* 86 (*Sup. Ct.* 1872). The problems of valuation in a highly developed industrial urbanized state, however, require that the boards consult proofs of such quality if they are to form intelligent judgments as to existing assessment ratios. The day is past when estimates from generalized information or knowledge will suffice, at least in the absence of credible admissions by local assessors as to the extent of local undervaluation.

But the municipalities must be informed what data was consulted and considered by the county board in determining the assessment ratios and be afforded a fair opportunity to refute such data, and to present their own. The statute, *N. J. S. A.* 54:3–18, requires as much and indeed from the very nature of such proofs it would be requisite without the statute as a matter of simple fairness and justice. The municipalities may well be able to offer similar or other data giving rise to doubts of the inferences drawn from the board's own data and resulting in revision of the board's conclusions. The boards should welcome such aid from the municipalities to assure that the assessment ratios finally promulgated are as accurate as circumstances will permit, with due regard to the statutory time limits within which the tables must be completed. *City of Passaic v. Passaic County Board of Taxation, supra; Pennsylvania Railroad Co. v. Dept. of Public Utilities,* 14 *N. J.* 411 (1954).

There is another reason why this table must be set aside and another promulgated by the Division of Tax Appeals. We learn from the stipulation that after equating all aggregates to 25% of true value, some aggregates were reduced below that standard for reasons, among others, that

"the percentage of increase as determined from its figures would have worked a hardship upon the municipality affected, and in other municipalities the respondent was satisfied that the local authorities were making an effort to increase assessments to the required level." But thereby the county board created not balance but imbalance in the several assessment ratios decreasing the percentage shares of the common burden of the municipalities so favored and saddling the other municipalities with more than their proportionate shares. The taxing districts thus favored are not identified, and the error can be rectified only by the promulgation of a new table.

Reversed.

VANDERBILT, C. J. (concurring). I concur in the result of the majority opinion and my sentiments expressed in my concurring opinion in *City of Passaic v. Passaic County Board of Taxation*, 18 *N. J.* 371 (1955), are equally applicable here.

VANDERBILT, C. J., and HEHER, J., concurring in result.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.