CITY OF PASSAIC, A MUNICIPAL CORPORATION, PLAIN-
TIFF-APPELLANT, v. PASSAIC COUNTY BOARD OF TAX-
ATION, AND DIVISION OF TAX APPEALS, DEPART-
MENT OF THE TREASURY, DEFENDANTS-RESPOND-
ENTS.

Argued May 19, 1958—Decided June 25, 1958.

*Mr. William N. Gurtman* argued the cause for appellant.

*Mr. David M. Satz, Jr.,* Deputy Attorney-General, argued the cause for respondents (*Mr. Harold Kolovsky,* Acting Attorney-General, attorney).

The opinion of the court was delivered by

HEHER, J. We certified, *sua sponte,* an appeal taken by the plaintiff City of Passaic from a judgment of the State Division of Tax Appeals affirming the Passaic County Equalization Table established by the county board of taxation for the year 1957 under *R. S.* 54:3–18, attesting to "the assessed valuations of real property, the ratio of assessments to true value, the percentages by which such valuations have been increased or decreased, and the true valuations as finally determined by us for the year."

On September 28, 1956 the Director of the State Division of Taxation promulgated a table of equalized valuations for Passaic County under the State School Aid Law. *L.* 1954, *c.* 85, *N. J. S. A.* 18:10–29.30 *et seq.* The table was on that day forwarded by the Director to the clerk of each municipality and the secretary of each county board of taxa-

tion, as required by *L.* 1954, *c.* 86, *N. J. S. A.* 54:1–35.1, accompanied by a letter stating that the table had been certified to the State Commissioner of Education for use in the determination of the amount of state school aid for the school year 1957-1958, and was thereby promulgated according to the terms of the last-cited act; that "there are being sent, to the assessor's office in each municipality copies of the lists of usable and non-usable sales transactions used by the Division of Taxation in determining the assessment ratio and equalized valuation of that district"; that "[c]opies of such lists are also being furnished to the county board of taxation together with statements setting forth the procedures and computations used in developing the assessment ratios and equalized valuations for each of the municipalities within. the county," and "[t]his additional information is, of course, available to interested municipal officials at the office of the county board." Reference was made to the "adequacy of sampling," the Division's experience, and the method used "in developing the 1955 Table."

On the petition of certain taxing districts of the county directed to the State Division of Tax Appeals, a review of the table was had and the result was changes in the ratios of four districts, as follows:

| | |
|---|---|
| Passaic | 38.39 to 38.93 |
| Pompton Lakes | 26.29 to 27.08 |
| Totowa | 31.22 to 32.13 |
| West Milford | 22.81 to 24.38 |

On January 17, 1957 the Passaic County Board of Taxation issued a preliminary county equalization table for 1957 pursuant to *R. S.* 54:3–17, and then came the final certification of March 8, 1957, sustained by the judgment of the State Division of Tax Appeals now under review.

The insistence is that the Division and the county board erred (a) "in failing to lay before the representatives of the taxing districts the data underlying the determination of average assessment ratios" and "to afford the taxing districts fair opportunity both for the refutation of such data and to

present their own data"; (b) "in failing to take proper judicial notice of the Director's table promulgated pursuant to the State [School] Aid Law" and "to give due effect thereto in determining the County Equalization Table"; (c) "in ignoring the procedures and computations promulgated by the Director in his letter of September 28, 1956"; and (d) "in determining the issue as an adversary proceeding thereby imposing an unwarranted burden of proof on appellant."

*City of Passaic v. Passaic County Board of Taxation,* 18 *N. J.* 371 (1955), and the companion case of *Borough of Little Ferry v. Bergen County Board of Taxation,* 18 *N. J.* 400 (1955), are invoked for the procedural principle that on an inquiry such as this, the Division and the county board are under a duty to disclose to the participating municipalities "data of which official notice is taken" and "other data to be considered in the preparation of the table" and the "data underlying the determination of average assessment ratios," and to afford the taxing districts "fair opportunity both for the refutation of such data and to present their own."

But there was no violation of this procedural standard. The evidence adduced at the Division hearing from Mr. James J. Murner, the experienced secretary of the county board, reveals compliance with procedural and substantive requirements. At the first hearing held by the county board on the preliminary table, attended by the representatives of the municipalities and by counsel for the City of Passaic, the mode of computing the preliminary table was made known. Consideration was given to the school-aid ratios compiled by the Director for the year 1956, following a two-year study of sales ending June 30, 1956; and the board enlarged the study period to reflect experience subsequent to July 1, 1956, the terminal date for school-aid computation, and to determine whether there had been changes in the assessments. In this manner, account was taken of assessment increases due to new building construction and demolitions. The board also had before it revaluations of assessable property made by Prospect Park and Ringwood as of October 1, 1956,

resulting in new average ratios of 33-1/3% and 25%, respectively; and the new ratios were used in computing the preliminary and final tables. And West Paterson was given credit for increased assessments as a result of a reassessment made as of October 1, 1956. Adjustments were made accordingly, and errors of local assessors in their tax lists and duplicates corrected.

In 12 of the 16 taxing districts the county board, the Division concurring, raised the ratio of assessed to true value; in four, including Passaic, there was no change.

The adjustment process and the manner of determining the ratios embodied in the table were set forth at length; and there can be no doubt of a full disclosure of the *modus operandi* and of all data pertinent to the inquiry. There was no concealment of data or operative factors entering into the determination; and there is no objection to the mathematical computation. The city's complaint seems to be largely procedural. There is no contention of inequality of treatment and burden as to the taxing districts *inter se*.

But there was no substantial administrative deficiency. No objection directed to procedure was interposed by the city during the hearing before the county board. The city there challenged the board's "authority to change the Director's table"; and it is now insisted that the Division and the county board erred in failing to take "proper judicial notice of the Director's table promulgated" under the State School Aid Law, and "to give due effect thereto" in formulating the equalization table, and "in ignoring the procedures and computations promulgated by the Director" in the letter which accompanied the certified copy of the table mailed to the local authorities in accordance with the statute. Before the board, counsel for Passaic "questioned [its] authority to change the Director's table"; the board, he said, "owed all the municipalities a formula"; it should "give a more condensed statement than that which had been given in explanation of how the Board arrived at the ratios." And he continued: the board "should have used a two-year average";

"all the other counties had used the Director's table"; and the board "had no right to tamper with the Director's table."

In a word, counsel's point was that the board was bound at all events by the Director's table established in aid of the distribution of state school funds, an untenable hypothesis. In reality, the basic grievance was, and is, the board's readjustment of the ratios to accord with all relevant data as of the statutory assessment date. Yet this was its peremptory duty under the statute. *Delaware, L. & W. R. R. Co. v. Neeld*, 23 *N. J.* 561, 572 (1957).

The information given in the Director's letter was merely explanatory; it had to do with the use of available data making for "more accurate and equitable assessment ratios and equalized valuations"; and there is no contention of a prejudicial omission in this regard.

There was a full disclosure of the data used and the procedural process; and the city was not visited with an undue burden of proof. The point is that equalization is not "an adversary proceeding," but rather one *"quasi*-legislative" in nature which does not impose upon a complaining municipality "the burden of proof incident to an adversary review."

█ This criticism is not well founded. The proceeding did not, either in the Division or in the county board, partake of an adversary quality. It was in the nature of an inquiry to establish fair assessment ratios for the statutory purpose; there was a full revelation of the data used and the procedural course, and the city was afforded an opportunity to test and refute the evidence adduced and to offer such evidence as it deemed relevant to the subject matter. Such was the nature of the inquiry, in law and in fact.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, FRANCIS and PROCTOR—6.

*For reversal*—None.