133 N.J. Super. 46 (1975)
335 A.2d 75
BOROUGH OF SAYREVILLE, IN THE COUNTY OF MIDDLESEX, PETITIONER-APPELLANT,
v.
THE MIDDLESEX COUNTY BOARD OF TAXATION, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 1974.
Decided February 4, 1975.
*48 Before Judges LORA, HANDLER and TARLETON.
Mr. Leo Rosenblum argued the cause for appellant.
Mr. Richard M. Conley, Deputy Attorney General, argued the cause for respondent Middlesex County Board of Taxation (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Richard H. Saxe, Deputy Attorney General on the brief).
Mr. Jeffrey M. Hyman argued the cause for respondent Township of East Brunswick (Messrs. Borrus, Goldin and Foley, attorneys).
Mr. Louis J. Alfonso argued the cause for respondent Township of Madison.
The opinion of the court was delivered by HANDLER, J.A.D.
This proceeding was commenced by the Borough of Sayreville filing a petition with the Division of Tax Appeals pursuant to N.J.S.A. 54:2-37, seeking review of the 1973 equalization table promulgated by the Middlesex County Board of Taxation. The petition challenging the 1973 Middlesex County equalization table was heard in the Division of Tax Appeals which determined that the table should not be revised, and judgment was entered by the Division affirming the table. Sayreville then appealed that judgment to the Appellate Division.
In 1973 the Middlesex County Board of Taxation elected to change the level of assessment of all real estate in Middlesex *49 County from 50% to 100%. The county board issued a directive to all assessors in the county advising that for the tax year 1973 each assessment was to be increased to full value as of October 1, 1972. The directive stressed that it would not be sufficient for the assessors "to merely double the 1972 assessments."
In determining ratios of aggregate assessed to aggregate true value for the 1973 county equalization table, the Middlesex County Board of Taxation applied the following system to all Middlesex County taxing districts: the county board used the same basic sales data found in the 1972 Table of Equalized Valuations, promulgated by the Director of the Division of Taxation pursuant to N.J.S.A. 54:1-35.1 et seq. for the purposes of the distribution of state school aid. This was essentially the same list of "usable" sales relied upon by the Director.[1] The period of sales covered by the county board was from July 1, 1971 to June 30, 1972. The county board compared these sales to the 1973 assessments and arrived at individual ratios of assessed value to sales price for each usable sale. Thereupon, the individual ratios were totalled and divided by the number of sales, resulting in a "district ratio" for each taxing district.
Sayreville seeks to have the county equalization table revised by using ratios resulting from the use of the "Page 8 formula," described in detail in Willingboro v. Burlington Cty. Bd. of Taxation, 62 N.J. 203 (1973). It contends that the use of the Page 8 formula is mandated by the Willingboro *50 decision and that by its use its county tax burden would be reduced by $100,000. It claims that in devising an equalization table the sales price should be compared to the assessment which was on the books at the time the sale took place (the method used by the Director), rather than to an assessment made subsequent to the sale (as done by the county board).
It was early stated in Passaic v. Passaic Cty. Bd. of Taxation, 18 N.J. 371, 385 (1955), that there is no specific statutory
* * * mode for arriving at equalization in the county table. It is a general proposition of law that "where a statute empowers a state board to equalize valuations for taxation, but does not point out the mode, any reasonable and efficient mode may be adopted." [at 385; citations omitted]
This standard has been often reiterated. E.g., Kearny v. Div. of Tax Appeals, 35 N.J. 299 (1961); Woodbridge v. Middlesex Cty. Bd. of Taxation, 96 N.J. Super. 532 (App. Div. 1967).
The Willingboro case, relied upon by Sayreville, involved the question of how a county board of taxation should accomplish equalization when some, but not all, of the taxing districts within the county had undergone a revaluation or reassessment. The Supreme Court held, in essence, that a county board must uniformly apply "substantially similar data and a common standard" to all taxing districts in the county. 62 N.J. at 219. County boards should not make separate decisions or accord different treatment concerning non-revalued and revalued districts "independent of each other," since "the interrelated effect of each of these decisions" affects the proportionate county tax burden of all the districts. Id. at 221. Significantly, and in contrast to the situation in the present case, in the Willingboro case the county board of taxation had applied different equalization methods to various taxing districts within the county. It failed to achieve uniformity between revalued and non-revalued *51 taxing districts by utilizing sales data in non-revalued districts and appraisal data in revalued districts, and in considering different time periods of its equalization study.
Here, all taxing districts in Middlesex County were treated uniformly in the equalization process in 1973. The county board used the same basic source data for all districts and applied the same time period for all districts. Thus, the Middlesex County Board met the Willingboro mandate by applying "substantially similar data and a common standard" to all districts. 62 N.J. at 219.
In Willingboro the Supreme Court opined that the Director's suggested Page 8 formula would provide the uniformity required by its decision. While approving the use of the Page 8 formula, however, the Supreme Court expressly recognized that the Page 8 formula is not the only tenable approach, viz:
While we thus approve and encourage the use of the page 8 formula on the remand by the Division of Tax Appeals, subject to any legitimate new objection which may be raised by any taxing district not a party to this appeal which must under the statute be heard at the new hearing, we are unable at this time to say it is the only tenable approach. It is settled that no particular method of equalization is mandatory for a county board of taxation. "* * * [A]ny reasonable and efficient mode may be adopted." City of Passaic, supra (18 N.J. at 385). A number of the boards, including Middlesex County's, use different methods in handling the problem of revalued districts. Some apparently use methods of equalization (without regard to the problem of revalued districts) somewhat different from those of the Director, although practically all develop sales ratio studies of some kind, and we cannot say that any of them are invalid outside the context of the record of a particular case. We therefore do not accept the suggestion of the Director of the Division of Taxation that we order all county boards hereafter to use the page 8 formula for revalued districts where they use the Director's ratios for non-revalued districts, although we encourage it. [62 N.J. at 227-228]
In Newark v. Essex Cty. Bd. of Taxation, 124 N.J. Super. 76 (App. Div.), certif. den. 63 N.J. 566 (1973), the court recognized that any reasonable method of equalization would be acceptable. Moreover, the unweighted sales study approach to equalization for county tax purposes, as undertaken *52 by the Middlesex County Board of Taxation, has been upheld as a viable equalization technique comporting with the statutory objectives. Woodbridge v. Middlesex Cty. Bd. of Taxation, supra; Perth Amboy v. Middlesex Cty. Bd. of Taxation, 91 N.J. Super. 305 (App. Div.), certif. den. 48 N.J. 112 (1966).
Sayreville asserts that the method of equalization used by Middlesex County is unworkable and suspect because it encourages fraudulent practices since it involves a comparison of usable sales with the assessments made after the sale rather than prior to the sale. Thus, assessors may be tempted to manipulate the assessments of properties which are included in the sales study in order to influence the final ratio.
The Middlesex County board has equalized, revalued or reassessed taxing districts for many years by comparing the assessments resulting from the revaluation or reassessment program with sales prices from the prior year's sales study. According to the evidence, however, this has been done after careful screening for possible errors or manipulations by local assessors. The screening process consists of reviewing assessment changes to see if an assessor has changed a substantial number of assessments in a given area, or whether he has merely changed the assessments on properties subject to prior sales. If it appears that the assessor has singled out for assessment changes properties that have been recently sold, the county board seeks an explanation from the assessor. If not satisfied that the assessments have been changed uniformly within the district, or if satisfied that the assessor has engaged in "spot assessing," the county board rejects from its sales study the suspect sales, considering them unusable for equalization purposes.
In addition to such checks and self-regulation, any taxing district considering itself aggrieved by the utilization of a particular suspect sale may seek revision of the table at the equalization hearing before the board (N.J.S.A. 54:3-18) or upon a further appeal to the Division of Tax Appeals *53 (N.J.S.A. 54:2-35). If an affected taxing district has been prejudiced by the ratio ascribed to another district and claims that this was occasioned by attributing an improper assessment to a specific property included in the sales study, there is no reason why the inclusion of that sale could not be challenged in the same manner and with the same efficacy as any attack upon the Director's table for school aid purposes or the county's equalization table. See e.g., Kingsley v. Div. of Tax Appeals, 40 N.J. 338 (1963); Passaic v. Passaic Cty. Bd. of Taxation, 27 N.J. 467 (1958); Carteret v. Div. of Tax Appeals, 40 N.J. Super. 439 (App. Div.), certif. den. 22 N.J. 224 (1956).
It has been recognized, and should be restated, that the equalization of aggregates of assessments is, at best is an imperfect and inexact science. There devolves upon county boards of taxation only the duty of effectuating this process so as to secure, to the most feasible limit, a fair distribution of the common tax burden and to minimize as much as possible the unfair or disparate allocation of the joint tax. Passaic v. Passaic Cty. Bd. of Taxation, supra, 18 N.J. at 381. No specific plan or method has been prescribed in the carrying out of the equalization function and any reasonable and efficient method may be employed. Understandably, exactitude is neither expected nor required and a degree of imperfection is perforce tolerated. Willingboro v. Burlington Cty. Bd. of Taxation, supra, 62 N.J. at 220; Passaic v. Passaic Cty. Bd. of Taxation, supra, 18 N.J. at 385; Woodbridge v. Middlesex Cty. Bd. of Taxation, supra, 96 N.J. Super. at 536.
The primary obligation to equalize assessments lies with the county board of taxation. Its determination is presumed correct until overcome by sufficient competent evidence, "Which must be definite, positive and certain in quantity and quality." Perth Amboy v. Middlesex Cty. Bd. of Taxation, supra, 91 N.J. Super. at 309. Upon review of the county board's equalization table by the Division of Tax Appeals, the action taken by the Division itself is presumed to be *54 correct and the courts will interfere only upon a showing that the Division's action was arbitrary, capricious or unreasonable. Carteret v. Div. of Tax Appeals, supra.
For the foregoing reasons, the judgment of the Division of Tax Appeals is affirmed.
NOTES
[1] The following changes were made from the Director's table: (1) If districts had been revalued in 1972, the board included the sales for these districts from July 1, 1971 to December 1, 1971. Such sales were not included in the Director's table. (2) Sales were deleted or declared unusable if the use of the land had changed, or if the land had been subdivided, and a sale had occurred during the sales period in question. For example, land for which there was an assessment and a sale in 1972, but which was subdivided in 1973, was not included by the board as a usable sale. (3) Sales were deleted which the Director improperly included in his table. Approximately 100 changes were thus made in the Director's table.