DELAWARE, LACKAWANNA AND
WESTERN RAILROAD COM-
PANY, Plaintiff,

v.

William KINGSLEY, individually and as
Deputy Director, Division of Taxation,
Department of the Treasury, State of
New Jersey, the Cities of Hoboken, Jer-
sey City and Newark, New Jersey, and
the Township of Secaucus, New Jersey,
Defendants.

LEHIGH VALLEY RAILROAD COM-
PANY, a corporation of Penn-
sylvania, Plaintiff,

v.

William KINGSLEY, individually and as
Deputy Director, Division of Taxation,
Department of the Treasury, State of
New Jersey, Jersey City, a municipal
corporation of New Jersey, City of
Newark, a municipal corporation of
New Jersey, and City of Perth Amboy,
a municipal corporation of New Jersey,
Defendants.

ERIE RAILROAD COMPANY, a corpo-
ration of New York, Plaintiff,

v.

William KINGSLEY, individually and as
Deputy Director, Division of Taxation,
Department of the Treasury, State of
New Jersey, Jersey City, a municipal
corporation of New Jersey, City of Ho-
boken, a municipal corporation of New
Jersey, Township of Weehawken, a mu-
nicipal corporation of New Jersey and
Town of Secaucus, a municipal corpo-
ration of New Jersey, Defendants.

CENTRAL RAILROAD COMPANY OF
NEW JERSEY, a corporation of the
State of New Jersey, Plaintiff,

v.

William KINGSLEY, individually and as
Deputy Director, Division of Taxation,
Department of the Treasury, State of
New Jersey, and Jersey City, New Jer-
sey, Defendants.

NEW YORK CENTRAL RAILROAD
COMPANY, Plaintiff,

v.

William KINGSLEY, Individually and as
Deputy Director, Division of Taxation,
Department of the Treasury, State of
New Jersey, Township of Weehawken,

Town of West New York, and Town-
ship of North Bergen, New Jersey, De-
fendants.

Civ. A. Nos. 88-60, 106-60, 108-60,
128-60, 231-60.

United States District Court
D. New Jersey.
Nov. 16, 1960.

David D. Furman, New Jersey State Atty. Gen., Theodore Botter, Union City, N. J., for State of New Jersey.

Augustus Nasmith, Hoboken, N. J., for plaintiff Delaware, L. & W. R. Co.

Lamb, Langan & Blake, by Raymond Lamb, Jersey City, N. J., for plaintiffs Lehigh Valley R. Co. and Erie R. Co.

Joseph C. Glavin, Jersey City, N. J., for plaintiff Central R. Co. of New Jersey.

O'Mara, Schumann, Davis & Lynch, by Joseph Davis, Jersey City, N. J., for plaintiff New York Cent. R. Co.

Herbert H. Fine, Newark, N. J., for defendant City of Hoboken, N. J.

Leo Rosenblum, Jersey City, N. J., for defendants Jersey City, N. J., and Secaucus Tp., N. J.

Vincent P. Torppey, by Jacob M. Goldberg, Newark, N. J., for defendant City of Newark, N. J.

Robert Wilentz, Perth Amboy, N. J., for defendant City of Perth Amboy, N. J.

Leon S. Milmed, Newark, N. J., for defendant Township of Weehawken, N. J.

Samuel L. Hirschberg, West New York, N. J., for defendant Town of West New York, N. J.

Nicholas S. Schloeder, Union City, N. J., for defendant Township of North Bergen, N. J.

WORTENDYKE, District Judge.

These are five separate actions by railroad companies, owning Class II railroad property (N.J.R.S. 54:29A–17, N.J. S.A.) in certain municipalities in New Jersey, against those municipalities and against the Deputy Director of the Division of Taxation of the Department of the Treasury of the State of New Jersey. Each complaint charges violation of plaintiff's rights under the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, by the assessment of plaintiffs' Class II real estate in the defendant taxing districts (1) at true value, (2) at a percentage of true value in excess of the average ratio of assessed to true value applied in assessing other real estate in the same municipality, and (3) at a percentage of true value in excess "of the objective statistical common or general ratio" of assessed to true value of non-railroad property determinable as of October 1, 1959. The assessments complained of are also alleged to constitute unlawful interference with and an undue burden upon interstate commerce, in contravention of the commerce clause of Article I, § 8, cl. 3 of the same Constitution.

Asserted jurisdiction in this Court is predicated upon §§ 1331, 1332 and 2201 of Title 28—the involvement of a federal question and minimum requisite amount, diversity of citizenship (in all but one of the actions) and the appropriateness of a declaratory judgment remedy.

Defendant municipalities deny the charged discrimination. They plead (1) adequacy of State administrative and judicial remedy; (2) failure to state a claim upon which relief can be granted; (3) estoppel by judgment in Central Railroad Co. of New Jersey v. Neeld, etc., 1958, 26 N.J. 188, 139 A.2d 119; and (4) res judicata in Central Railroad Co. of New Jersey v. Neeld, etc., 1958, 26 N. J. 172, 139 A.2d 110, certiorari denied 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1371.

Defendant Deputy Director, also denying discrimination, pleads (1) no violation of federal right; (2) res judicata; (3) lack of jurisdiction; (4) failure to state a claim upon which relief can be granted; (5) improper joinder of Kingsley as Deputy Director; (6) non-joinder of the State of New Jersey as an indispensable party; (7) sovereign immunity; (8) absence of justiciable controversy; (9) absence of federal question; (10) lack of diversity of citizenship; (11) adequacy of remedy under State law; and (12) lack of authority in this Court to enjoin assessment of tax under State law by reason of the provisions of 28 U.S.C. § 1341.

The alleged federal questions raised by the plaintiffs are disclosed in their contentions that the actions arise under the commerce clause, Article I, section 8, clause 3, of, and under the due process and equal protection clauses in section 1 of the Fourteenth Amendment to the Constitution of the United States. They seek declaratory judgments pursuant to 28 U.S.C. § 2201. It is alleged and conceded that the jurisdictional minimum prescribed by section 1331 is involved.

The allegations of each complaint may be generally summarized as follows: Plaintiff is an interstate carrier by rail, owning parcels of real estate which it uses for railroad purposes and which are located in the defendant municipalities in the State of New Jersey.[1] Those properties are classified by the New Jersey Railroad Tax Law of 1948, N.J.S.A. 54:-29A–1 et seq., as Class II railroad property, N.J.S.A. 54:29A–17. The latter section requires that all real property owned or used by a railroad company for railroad purposes in New Jersey shall be assessed for tax purposes annually by the Director of the Division of Taxation of the Department of the Treasury of the State. He is required to determine, on November first of each year, the true value of Class II railroad property as of the preceding January first, and to deliver a detailed statement of his valuation of the property to the taxpayer not later than December 10 of that year; he is also required to certify the value of Class II railroad properties, no later than December 15 of that year, to the assessors of the taxing districts in which such property is situated. All tax receipts upon such property is required to be paid to the municipality in which the property is located.

The complaint also quotes paragraph 1 of section I of Article VIII of the Constitution of New Jersey, 1947.[2]

The law provides, and the complaint recites, a succession of four procedures for the review of the tax assessments of Class II railroad property in the State, as follows:

(1) A railroad taxpayer, claiming that error has been made in its Class II property valuations, may petition the Director for review thereof on or before the second Monday of January following the completion of the valuations. The Director is required to hold a hearing upon the petition and to make his determination thereon before March 15 following the filing thereof. On the latter date he is required to certify the value of the Class II property situate in each taxing district, with such corrections or changes as he shall have made, to the County Board of Taxation of the County in which the property is located, N.J.S.A. 54:29A–18. The County Board of Taxation is required to certify to the Director the general tax rate adopted for the taxing district in which the Class II railroad property is located,[3] and, by ap-

---

1. An annual property tax is imposed upon all property used for railroad purposes, N.J.S.A. 54:29A–7. Property of a railroad not used for railroad purposes is assessed for taxes by the assessors of the respective taxing districts, N.J.S.A. 54:4–1. N.J.S.A. 54:29A–24(a) directs that the "entire amount of tax receipts derived from the assessment of Class II property * * * shall be, * * * allotted to and paid over to the local taxing districts in which such property is situated. Each taxing district shall receive the total amount of tax derived from the assessment of second-class railroad property situated within the taxing district." Subdivision (b) of the same section requires payment by the State Comptroller of the amounts of second-class railroad property taxes allotted to each county on or before December 10, and the County Treasurer to pay, not later than December 15, the amount of such taxes allotted to each taxing district therein, less the amount due for county taxes from the taxing district.

2. Article VIII, section I, paragraph 1, of the New Jersey Constitution of 1947 provides as follows:

"Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value; and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district."

3. The following section, N.J.S.A. 54:29A–19, provides:

"(a) The value of Class II property certified by the commissioner to the respective county boards of taxation shall be included for all purposes in the total valuations taxable in the several taxing districts, and the county board of taxation of each county shall ascertain and

plying such rate to the valuations which he has determined, the Director thereupon assesses the annual tax upon the Class II railroad property.

(2) A further opportunity for review of a tax assessment of Class II railroad property is afforded by way of written complaint of the taxpayer to the State Board of Tax Appeals of New Jersey. Such a complaint must be filed on or before the third Monday of May following the making of the assessment. N.J.S.A. 54:29A–31. A hearing upon the complaint is provided, and, if it "appear upon such hearing that any such assessment * * * is illegal, excessive, insufficient or that there has been illegal discrimination in the assessment," the Board is required to correct, adjust and equalize the assessment. N.J.S.A. 54:-29A–33. The Board must conclude its hearing on or before the first day of November following the filing of the complaint, and must certify its final determination to the State Tax Commissioner between the 5th and the 10th days of the same month. N.J.S.A. 54:29A–34.

(3) Yet another opportunity for review is afforded by the provision that the final determination of the Division of Tax Appeals may be contested by the taxpayer in a proceeding in lieu of a prerogative writ in the Superior Court of the State, N.J.S.A. 54:29A–36. If that Court in such a proceeding shall find that the final determination of the Division of Tax Appeals respecting the assessment "is illegal, excessive, insufficient or that there has been illegal discrimination in the assessment," the Court is re-

quired to "correct, adjust and equalize such assessment * * * or refer same back to the director of the division, who shall correct, adjust and equalize the assessment * * * in accordance with the instructions or decision of the court." N.J.S.A. 54:29A–37.

(4) An appeal from the decision of the Law Division of the Superior Court in an action in lieu of a prerogative writ lies to the Appellate Division of the Superior Court, and, under certain circumstances, the New Jersey Supreme Court may certify for review the decision of the Appellate Division. N.J.R.R. 4:88–7; New Jersey Const.1947, Art. VI, sec. V, par. 2.

The complaints further allege that the Director determined the true value of the railroads' Class II real estate for the tax year 1960 prior to December 10, 1959, and that the local assessor of each taxing district in which the Class II property is situated is required by law, "after examination and inquiry, determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on October 1 first next preceding." N.J.S.A. 54:4–23. Plaintiffs charge that whereas the State Constitution and State law require all real estate, both that designated as Class II railroad property and other non-railroad property, to be assessed at true value, the assessors of the different taxing districts "have for many years, including the tax year 1960, consistently, systematically, intentionally and notoriously failed to assess real estate within their respective

certify to the commissioner on or before the first day of April in each year, following receipt from the commissioner of Class II property valuations, the general tax rate per hundred dollars of valuation to apply in that year in each taxing district in the county containing Class II property valuations.

"(b) Upon the receipt of the certificates from the county boards of taxation, the commissioner shall on or before the tenth day of April assess a tax to each taxpayer upon its Class II property valuations at the general tax rate in each

taxing district so certified by the respective county boards of taxation."

Municipal budgets in New Jersey must be adopted not later than the 80th day after the beginning of the budget year, N.J.S.A. 40:2–10. The budget constitutes authorization of the amount to be raised by taxation for the purposes of the municipality, and a certified copy must be transmitted by the municipal clerk to the county board of taxation not later than the 90th day after the beginning of the budget year, N.J.S.A. 40:2–11.

taxing districts at true value as required by the aforecited laws of New Jersey." Because a State law (N.J.S.A. 54:1–35.1 to 54:1–35.5) requires the Director to promulgate a table of equalized valuations setting forth the average ratio of assessed to true value of real estate in each taxing district, and because such a table for each of the years 1955 through 1959 discloses average ratios of assessed to true value in the different taxing districts ranging from 22.33% to 80.89%, plaintiffs contend that they are discriminated against by being called upon to pay a tax at 100% of true value, for local governmental purposes, which is disproportionate to that assessed upon a lower proportion of true value, against the owners of non-railroad property in the same taxing district. Plaintiffs further allege that since 1954 the Director has consistently refused to reduce the assessments of their Class II real estate to the average ratio of assessed to true value as disclosed in the table of equalized valuations for each of the years aforesaid.

■ Upon the foregoing allegations, plaintiffs conclude that the Director's refusal to reduce his assessments of Class II railroad property to the average ratio of assessed to true value disclosed by the tabulation of equalized valuations promulgated by him imposes a discriminatory burden of taxation upon the plaintiffs, which deprives them of property without due process of law, and denies to them the equal protection of the law, in contravention of the Fourteenth Amendment to the Constitution of the United States. Plaintiffs further contend that such discrimination imposes an undue burden upon interstate commerce in violation of Clause 3 of Section 8 of Article I of the same Constitution. This contention was neither briefed nor argued. It will, therefore, be assumed to be abandoned.

Plaintiffs were unsuccessful in obtaining reductions, for the years 1953 to 1956 inclusive, in the Director's assessments upon their Class II properties through administrative proceedings before him and before the Division of Tax Appeals.

In its petition for review before the Director, Lackawanna charged that his assessments of its Class II property for 1956 were excessive and not according to the standard of value governing the assessment of other real property within the municipalities. Upon the hearing upon that petition the Director ruled (1) that it was his duty to assess Class II railroad property at true value; and (2) that he was not permitted to apply to such assessments the Tables of Equalized Valuations prepared by him to be used in the calculation and apportionment of distributions under the State School Aid Act of 1954 (N.J.S.A. 18:10–29.30 to 18:10–29.48). On January 20, 1956 Lackawanna brought an action in the Law Division of the Superior Court of New Jersey against the Director and four of the presently defendant municipalities "alleging that the Director had failed in the performance of his duty to assess Lackawanna's Class II real property within the several municipalities ' * * * according to the same standard of value and according to the common ratio employed in levying assessments * * *', and thus the assessment at 'true value' constituted undue discrimination in violation of the 1947 State Constitution, Article VIII, Section I, paragraph 1, and the Federal Constitution as well * * *." Lackawanna sought judgment (1) declaring that the Director had the power and was under a duty to assess the railroad's Class II property, for purposes of the 1956 tax, " 'according to the average ratio of assessed to true value employed in levying assessments on other real property located within' the respective municipalities, and 'at less than true value, when necessary to prevent discrimination,' and (2) commanding the Director to 'make his final assessment' in the several municipalities according to the ratios given in his promulgated equalization table." Lackawanna's complaint in that case also charged intentional assessment by defendant municipalities contrary to the "true value" requirements of N.J.S.A. 54:4–1. On certified appeal from sum-

mary judgment for Lackawanna, the Supreme Court of New Jersey (Delaware, Lackawanna and Western R. Co. v. Neeld, 1957, 23 N.J. 561, 130 A.2d 6, 14) held that (1) in making his statutory review under N.J.S.A. 54:29A–18, upon a complaint of discrimination, the Director is not bound to adhere to the "true value" standard; (2) the sales-assessment ratios found by the Director for the apportionment of moneys provided for State School Aid under N.J.S.A. 54:1–35.1 are not competent proof in an individual discrimination case; and (3) the issue of discrimination "is peculiarly within the province of the administrative tribunals; and there is no occasion for judicial intervention before the exhaustion of the administrative remedies * * (which) are wholly adequate, and the normal course in the circumstances."

Whether the presently pending motions are to be treated as for judgment upon the pleadings, under F.R.Civ.P. Rule 12(c), 28 U.S.C.A., or for summary judgment, under F.R.Civ.P. Rule 56(b), they are based upon the following asserted grounds:

(1) Lack of jurisdiction in this Court because of the existence of an adequate remedy in the administrative and judicial tribunals of New Jersey;

(2) Failure of the complaints to state claims upon which relief can be granted; and

(3) Lack of authority in this Court to review questions determined by the New Jersey Supreme Court in Central Railroad Co. of New Jersey v. Neeld, etc., 1958, 26 N.J. 188, 139 A.2d 119, and in Central Railroad Co. of New Jersey v. Neeld, etc., 1958, 26 N.J. 172, 139 A.2d 110, certiorari denied 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1371.

■ The motions are appropriate to test the jurisdiction of this Court. The defendants are deemed to admit as true, for the purposes of such motions, all well-pleaded factual allegations of the complaint. Chicago Metallic Manufacturing Co. v. Edward Katzinger Co., 7 Cir., 1941, 123 F.2d 518. We are not,

however, required to assume as true the conclusory statements (1) that the plaintiffs have been discriminated against in the assessment of their Class II property, or (2) that such discrimination is or has been systematic and intentional. An intentional discriminatory and unfair assessment is a violation of federal constitutional rights. Central R. Co. of New Jersey v. Martin, 3 Cir., 1933, 65 F.2d 613, citing, inter alia, Sunday Lake Iron Co. v. Township of Wakefield, 1918, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154.

■ Township of Hillsborough Somerset County, N. J. et al. v. Cromwell, 1946, 326 U.S. 620, 66 S.Ct. 445, 448, 90 L.Ed. 358, enunciated the principle that "the equal protection clause of the Fourteenth Amendment protects the individual from State action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. The right is the right to equal treatment * * *. The constitutional requirement * * * is not satisfied if a State does not itself remove the discrimination, but imposes on him against whom the discrimination has been directed the burden of seeking an upward revision of the taxes of other members of the class." In that case jurisdiction was recognized because (1) it was speculative whether the State remedy would afford the full protection of the federal constitutional guarantee and (2) the allowance of a writ of certiorari by the then existing Supreme Court of the State was purely discretionary and not reviewable.

A case in which unconstitutional discrimination was found to exist in the tax assessments imposed upon railroad property was that of Delaware, Lackawanna & Western R. R. Co. v. City of Hoboken, 1951, 16 N.J.Super. 543, 85 A.2d 200, 205, in which Judge Bigelow said:

"Where—as in New Jersey—most land is assessed by local authorities, but certain land is assessed by a body of state officials, then, if there is systematic undervaluation by the local authorities, while the state officials although presumably aware of

such local undervaluation, yet make their assessments upon full value, a case of unlawful discrimination is presented."

That case was an appeal by municipalities from the decision of the Division of Tax Appeals settling the assessment of second-class railroad property. It exemplifies the adequacy of the State court remedy for discriminatory tax assessment. On certification, the New Jersey Supreme Court reversed only upon the ground that the record before the Division of Tax Appeals was fatally defective for failure to contain findings under N.J.S.A. 54:29A-33, which provides "[r]elief from assessments upon Class II property in railroad use allegedly discriminatory in relation to assessments upon locally assessed land." See Delaware L. & W. R. Co. v. City of Hoboken, 1952, 10 N.J. 418, 433, 91 A.2d 739, 746. The foregoing quoted language was quoted with approval in Hackensack Water Co. v. Township of North Bergen, 3 Cir., 1952, 200 F.2d 313, 316, but in that case, the District Court, 103 F.Supp. 133 was affirmed in refusing to take jurisdiction of the complaint of discriminatory assessment because it was found that "with the present pertinent state law (N.J.S.A. 54:2-39)[4] clearly allowing a taxpayer to raise the question of unlawful discrimination, the situation which called forth the Hillsborough decision of 1946 no longer exists in New Jersey." Because the Water Company was afforded an appeal from the assessment which it claimed to be discriminatory, the question of its unconstitutionality could be raised and passed upon in the State courts. Therefore, "having that course open to it appellant cannot use the Hillsborough principle to justify its suit in the District Court." It was because of the inadequacy of the State remedy, as illustrated by Royal Mfg. Co. v. Board of Equalization, 76 N.J.L. 402, 70 A. 978, affirmed 78 N.J.L.

337, 74 A. 525, that the Court in the Hillsborough Township case had recognized jurisdiction to review an alleged unconstitutional (because discriminatory) tax assessment. By the time of the Hackensack Water case decision, the previous inadequacy of the State remedy had been corrected. See Baldwin Construction Co. v. Essex County Board of Taxation, 1954, 16 N.J. 329, 108 A.2d 598; Gibraltar Corrugated Paper Co. v. North Bergen Township, 1955, 20 N.J. 213, 119 A.2d 135; Switz v. Middletown Township, 1956, 40 N.J.Super. 217, 122 A.2d 649, affirmed 23 N.J. 580, 130 A.2d 15.

In support of their contention that the complaints fail to state causes of action for discrimination, defendant municipalities rely upon Nashville C. & St. L. Ry. v. Browning, 1940, 310 U.S. 362, 60 S.Ct. 968, 84 L.Ed. 1254, and cases citing and following the same. In the Nashville case, the property of the railroad and that of other public utility corporations was systematically assessed for tax purposes at full cash value, while all other kinds of property were assessed at less than cash value. The railroad brought an action in the Tennessee Courts to reduce, as excessive, a tax assessment upon its property. Dismissal by the trial court was affirmed on appeal, and certiorari was granted by the Supreme Court of the United States because of the federal constitutional question. The railroad claimed that the challenged assessment violated the Fourteenth Amendment of the United States Constitution guaranteeing due process of law and equal protection of the laws. The railroad also contended that the assessment offended the commerce clause of the Constitution by constituting a burden upon interstate commerce. The law of the State prescribed two separate methods for the tax assessment of property, each with a separate procedure. Property of public service corporations was assessed by the

4. N.J.S.A. 54:2-39 gives a taxpayer the right to appeal from the judgment of a County Board of Taxation to the Division of Tax Appeals. Cf. N.J.S.A. 54:- 29A-31, providing for appeal from the Commissioner's assessment under the Railroad Tax Law of 1948 to the State Board of Tax Appeals.

Railroad and the Public Utilities Commission. All other property was assessed by local officials. For more than forty years the local assessors had valued property for tax purposes at far less than its true worth, while the Commission had assessed at full value. In affirming the highest court of the State of Tennessee, the Supreme Court of the United States refused to find unconstitutionality in the assessment of the railroad's property. At page 368 of the Court's opinion, 60 S. Ct. at page 972, it is stated:

"That the states may classify property for taxation; may set up different modes of assessment, valuation and collection; may tax some kinds of property at higher rates than others; and in making all these differentiations may treat railroads and other utilities with that separateness which their distinctive characteristics and functions in society make appropriate—these are among the complexities of taxation and of constitutional law."

The factual situation in the Nashville case is distinguishable from that presented by the allegations of the complaints in this litigation. In requiring the application of a single standard of value for purposes of tax assessment of real estate, the New Jersey Constitution makes no distinction, based either upon the nature of the ownership or that of the use of the property. In like manner the implementing statute is equally barren of any provision for classifying real property in accordance with its ownership or use, but requires that all such property be assessed at true value for tax purposes. While railroad property in New Jersey is itself divided into three categories, we are herein concerned only with that known as Class II railroad property, which is real estate owned by a railroad and used for railroad purposes, but not including the so-called "main stem" property. The applicable statute requires that this category of railroad property be assessed for tax purposes by the same criterion as that required to be employed in assessing non-railroad prop-

erty. The only distinction in the assessment procedure applicable to each general category of property is to be found in the difference in the identity of the assessing authority. Railroad Class II property is to be assessed by the Commissioner (Director), while other property is to be assessed by the local assessor.

In Sunday Lake Iron Co. v. Township of Wakefield, 1918, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154, cited in Nashville, supra, the Board of State Tax Commissioners raised the assessed value of the plaintiff's property to one hundred percent while it knowingly left other property generally in the tax district assessed at thirty-three and a third percent of its value. At page 352 of Sunday Lake in 247 U.S., at page 495 of 38 S.Ct., the Court said:

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. And it must be regarded as settled that intentional systematic under-valuation by state officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property. Raymond v. Chicago Union Traction Co., 207 U.S. 20, 35, 37, 28 S.Ct. 7, 52 L. Ed. 78."

Nevertheless, there must be something more than mere errors of judgment by the taxing officials to support a claim of discrimination. There must be something which, in effect, amounts to an intentional violation of the essential principle of practical uniformity. The good faith of such officials and the validity of their actions are presumed. When assailed, the burden of proof is upon the complaining party. The Supreme Court found the evidence insufficient "clearly to establish that the state board entertained

or is chargeable with any purpose or design to discriminate."

Sioux City Bridge Co. v. Dakota County, 1923, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340, was a case in which the Nebraska part of plaintiff's bridge over the Missouri River between that State and Iowa was assessed by the assessor of Dakota County, Nebraska, at $600,000 for tax purposes. On appeal to the Board of Equalization, the assessment was raised to $700,000. The Bridge Company appealed to the County Court, uring violation of the due process and equal protection clauses of the Fourteenth Amendment. The appeal was dismissed upon a finding that the portion of the bridge in question was worth more than $700,000. The State Supreme Court affirmed on appeal, and concluded that the true value was not so manifestly wrong as to justify disturbing the assessment. Despite the contention that other property in the county was assessed for much less than its true value, the State appellate court held that, since the bridge was assessed at its true value, the proper remedy would be to have the value of other property raised to its true value, rather than to have the property assessed at true value reduced. On certiorari to the highest court of the State, the Supreme Court of the United States reversed. At page 446 of its opinion, at page 191 of 43 S.Ct., the Court stated:

"The dilemma presented by a case where one or a few of a class of taxpayers are assessed at 100 percent of the value of their property in accord with a constitutional or statutory requirement, and the rest of the class are intentionally assessed at a much lower percentage in violation of the law, has been often dealt with by courts and there has been a conflict of view as to what should be done. There is no doubt, however, of the view taken of such cases by the federal courts in the enforcement of the uniformity clauses of state statutes and constitutions and of the equal protection clause of the Fourteenth Amendment. The exact question was considered at length by the Circuit Court of Appeals of the Sixth Circuit in the case of Taylor v. Louisville & Nashville R. R. Co., 88 F. 350, 364, 365, and the language of that court was approved and incorporated in the decision of this Court in Greene v. Louisville & Interurban R. R. Co., 244 U.S. 499, 516, 517, 518 [37 S.Ct. 673, 61 L. Ed. 1280]. The conclusion in these and other federal authorities is that such a result as that reached by the Supreme Court of Nebraska is to deny the injured taxpayer any remedy at all because it is utterly impossible for him by any judicial proceeding to secure an increase in the assessment of the great mass of under-assessed property in the taxing district. This court holds that the right of the taxpayer whose property alone is taxed at 100 per cent of its true value is to have his assessment reduced to the percentage of that value at which others are taxed, even though this is a departure from the requirement of statute. The conclusion is based on the principle that where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law."

The constitutional invalidity of systematic undervaluation by assessing authorities of some property as compared with their valuation of other property of the same class in other ownership was reiterated in 1931 in Cumberland Coal Co. v. Board of Revision of Tax Assessments, etc., 284 U.S. 23, 52 S.Ct. 48, 76 L. Ed. 146, where the petitioners complained that their coal fields were assessed for tax purposes at the same valuation as was applied to other coal lands in the county, notwithstanding the factors of greater remoteness from and inaccessibility to market, difference in cost of operations and of transportation, all of which affected their value. The prop-

erty owner claimed that the uniformity of valuation violated the equal-protection clause of the Fourteenth Amendment. This contention was explicitly overruled by the Supreme Court of the State. The Supreme Court of the United States held that, because the federal question had been passed upon by the State Court, it had jurisdiction to review the State Court's decision upon that federal constitutional question. The Supreme Court decided that there was no question but that the assessments under review were made pursuant to a deliberately adopted system, and did not result from mere errors in judgment. It therefore reversed the State Supreme Court by holding that the petitioning taxpayer was entitled to a readjustment of the assessments of its coal lands so as to put the assessments upon a basis of equality, with due regard to differences in actual value, with other assessments of coal lands in the same class within the same district.

■ That Class II railroad property and locally assessed other real estate constitute a single class which the New Jersey Constitution requires to be assessed at true value for tax purposes is conceded. Moreover, all parties to this litigation are aware that much locally assessed property is assessed for substantially less than true value for such purposes. However, as plaintiffs allege, there is no common level below true value at which non-railroad property is locally assessed to which this Court could properly reduce the plaintiffs' 1960 tax assessments upon their Class II property. The Director's Table of Equalized Valuations is not probative of the existence of a common level of assessment to which plaintiffs' assessments may be reduced and thus obviate the discrimination of which plaintiffs here complain. Such has been decided by the highest New Jersey court, whose determination in that regard this Court has no jurisdiction to review. Plaintiffs urge that Cummings v. Merchants' National Bank, 1880, 101 U. S. 153, 25 L.Ed. 903, is a precedent for this Court's intervention in the pending

cases. In that case a national bank sought an injunction against a county treasurer to prevent his collection of a tax wrongfully assessed against the shares of its stockholders. The grant of injunctive relief was affirmed because the evidence of discrimination in assessment was uncontradicted and no adequate remedy was available through a State agency.

■ The defendants in the cases at bar concede that (1) the New Jersey Constitution of 1947 and the statutory tax law of that State require that railroad Class II property and non-railroad real property must be assessed at true value for tax purposes; and (2) intentional and systematic underassessment of non-railroad real estate vis-a-vis full value assessment of Class II railroad property would constitute illegal discrimination, in violation of the rights guaranteed by the Fourteenth Amendment to the Constitution of the United States. Defendants contend, however, upon their present motions, that if such unconstitutional discrimination exists or were to occur, it appears from the allegations of the complaints in these cases that an adequate remedy is available in the administrative and judicial tribunals of the State. This contention raises three questions: (1) Is the existence of a State remedy apparent? (2) Is that remedy adequate? (3) Has this Court jurisdiction to afford an independent remedy?

■ The four stages of review of the Director's assessment of Class II railroad property afforded under State law have already been described. Their availability appears from the allegations of and references in the complaints. Plaintiffs concede their existence, and the complaints quote the statutory sections which embody the provisions for such review. Plaintiffs charge, however, that, despite their pursuit of those remedies, they have not received any relief for the tax years 1953 to 1959 inclusive. They contend that the State remedies so provided, when invoked for prior tax years, have proven inadequate in two respects: (1) the Division of Tax Ap-

peals has not yet made a final determination upon their complaints, and (2) the highest court of the State, while holding that the Director has jurisdiction to reduce Class II railroad property assessments below true value to eliminate discrimination, has nevertheless required proof of the existence of a lower common level of assessment of non-railroad property to support a finding of discrimination. Plaintiffs contend that compliance with that criterion of proof is impossible, and that, therefore, State judicial review is inefficacious. They point to Central Railroad Co. of New Jersey v. Neeld, etc., 26 N.J. 188, 139 A.2d 119, as authority for this contention. That case merely held that delay on the part of the Division of Tax Appeals in reviewing Class II railroad property tax assessments did not justify the courts in taking over the function of correcting the alleged discriminatory assessments which N.J.S.A. 54:29A–33 vests in the Division. Mere delay, on the part of a tribunal authorized to afford a remedy by review, in deciding the case before it, does not render that remedy inadequate, because compulsion could be brought to bear upon the dilatory body by mandamus or its equivalent. Moreover, evidence of past tardiness on the part of the Division is irrelevant to the adequacy of the remedy for the 1960 tax year which the Division is directed by the statute to afford. The tax assessment for each year gives rise to new and independent obligations, rights and opportunities for review. Plaintiffs, however, assert that (1) defendant municipalities did not, in 1959, and do not now have a common level of assessment for non-railroad real estate within their borders; (2) the Director had available data on October 1, 1959 [5] to determine an objective statistical common or general ratio of assessment level prevailing in the defendant taxing districts; and (3) the Director refuses to reduce plaintiffs' Class II property assessments for 1960 "to the average ratios set forth in said table of equalized valuations." Plaintiffs therefore conclude that they lack adequate remedies in New Jersey tribunals for the alleged unconstitutional discriminations of which they complain.

I must reject the foregoing conclusion. What the plaintiffs are attempting to accomplish in the present actions amounts to a circumvention of their State remedies, and to an attempt to use this Court as a forum in which to review the decisions of the highest court of New Jersey. The former may not and the latter cannot be accomplished. The same federal constitutional provisions which the plaintiffs invoke here were relied upon by them in Central Railroad Co. of New Jersey v. Neeld, etc., 26 N.J. 172, 139 A.2d 110, certiorari denied 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1371. It was not necessary for the court to reach the constitutional question, because it decided that case upon a finding of plaintiffs' failure to exhaust administrative remedies. The denial of certiorari by the United States Supreme Court was therefore inevitable. Had the New Jersey Supreme Court decision turned upon and erroneously decided the federal constitutional question, the United States Supreme Court would still have constituted plaintiffs' exclusive ultimate forum for review. Rooker v. Fidelity Trust Co., 1923, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362. The exercise of this Court's federal question jurisdiction must also be conditioned upon the prior exhaustion of State remedies. Matthews v. Rodgers, 1931, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447; Martin v. Creasy, 1959, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186; City of Montgomery v. Gilmore, 5 Cir., 1960, 277 F.2d 364, 370; Hackensack Water Co. v. North Bergen Township, supra. Baldwin Construction Co. v. Essex County Board of Taxation, 1954, 16 N.J. 329, 108 A.2d 598, is one of many examples of the adequacy of the Supreme Court of New Jersey as a forum for the vindication of the federal constitutional rights of the victim of discrimination in local

---

5. Real estate tax assessments are made for each year as of October 1 of the preceding year. N.J.S.A. 54:4–1.

real property taxation. That the fact of discrimination against a complainant taxpayer may be determined by State agencies is emphasized in Gibraltar Corrugated Paper Co. v. North Bergen Township, supra. "[T]he mere illegality or unconstitutionality of a state or municipal tax is not in itself a ground for equitable relief in the courts of the United States. If the remedy at law is plain, adequate, and complete, the aggrieved party is left to that remedy in the State courts, from which the cause may be brought to this court for review if any federal question be involved." Matthews v. Rodgers, supra, 284 U.S. at page 525, 52 S.Ct. at page 219. The principle above expressed is applicable to cases in which a federal declaratory judgment is sought. Great Lakes Dredge & Dock Co. v. Huffman, 1943, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407; Hackensack Water Co. v. North Bergen Township, supra.

With respect to the tax year 1960, the law provides and the complaints allege that the Director furnished the plaintiffs with a detailed statement of his valuations of their Class II property on or before December 10, 1959, and certified such valuations to the assessors of the taxing districts. The complaints fail to allege, however, that any of the plaintiffs filed its petition for review of the valuations on or before the second Monday of January, 1960. The plaintiffs did not await the Director's certification of the valuations of their property, which was required to be made to the County Boards of Taxation on or before March 15, 1960, but instead filed the present actions in February of that year. It is apparent from the complaints that the plaintiffs not only failed to exhaust, but are endeavoring by these actions to circumvent, the remedies available to them under the Railroad Tax Law of the State. This Court, therefore, should not and will not exercise its jurisdiction under the circumstances. Williams v. Tooke, 5 Cir., 1940, 108 F.2d 758, certiorari denied 311 U.S. 655, 61 S.Ct. 8, 85 L.Ed. 419; 28 U.S.C. § 1341; George F. Alger Co. of Detroit, Mich. v. Peck, D.C.E.D.Ohio 1954, 119 F.Supp. 812, affirmed 347 U.S. 984, 74 S.Ct. 853, 98 L.Ed. 1148.

Should the abstention doctrine be considered inappropriate for application to the situation disclosed in these actions, the complaints therein still fail to set forth claims upon which relief could be granted by this Court. Plaintiffs' contemplated evidentiary use of tables of average ratios of assessed to true value of real estate in the various taxing districts may not be permitted. The contention that the average of such ratios constitutes competent evidence of the existence of a common level of assessment below true value has been adjudicated adversely to the plaintiffs by the New Jersey Supreme Court in Delaware, Lackawanna & Western R. R. Co. v. Neeld, 1957, 23 N.J. 561, 130 A.2d 6. The table of equalized valuations which the Director is required to promulgate by N.J.S.A. 54:1-35.1 by the terms of that statute itself is intended to be used only for purposes of calculation and apportionment of State school aid under the State School Aid Act of 1954, N.J.S.A. 18:10-29.30 to 18:10-29.48. See Delaware Township v. Neeld, 1958, 52 N.J.Super. 63, 144 A.2d 801. Such a table is purely an arithmetical averaging of ratios between the respective aggregates of assessed and true values of real and personal property in each of the taxing districts of the State. N.J.S.A. 54:1-35.2. Because upon a motion for judgment upon the pleadings we must assume as correct the table or tables of assessment to true values set forth in the complaints, the question is posed whether the data disclosed in the tables is evidence of unconstitutional discrimination against the plaintiffs' Class II properties. The answer to this question must be in the negative as the New Jersey Supreme Court has unqualifiedly stated in the Lackawana case, 23 N.J. 561, at page 573, 130 A.2d 6, at page 13, as follows:

"There is an essential difference between a common or uniform assessment ratio of true value applicable to all alike in the same class

and the 'average' assessment ratio of true value. The 'common' ratio imports general equality in the incidence of the tax, the equality of burden that is of the essence of constitutional uniformity; the 'average' ratio is the arithmetical mean or median of varying ratios of true value, necessarily making for unequal proportions of value and thus for inequality of treatment and burden in the apportionment of the tax as between the several property owners."

Defendant municipalities further contend (1) that the maintenance of the present actions is proscribed by 28 U.S.C. § 1341 and (2) that the decisions of the Supreme Court of New Jersey in the two Central Railroad cases (26 N.J. 188, 139 A.2d 119 and 26 N.J. 172, 139 A.2d 110, certiorari denied 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1371), is res judicata. Section 1341 is a legislative expression of policy to exclude matters involving State taxation from Federal judicial interference. The Federal courts themselves have expressed a similar policy in similar cases, in the form of the abstention doctrine. "[A]s questions of federal constitutional power have become more and more intertwined with preliminary doubts about local law, we have insisted that federal courts do not decide questions of constitutionality on the basis of preliminary guesses regarding local law." Spector Motor Service v. McLaughlin, 1944, 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101.

I cannot find that the New Jersey decisions relied upon are res judicata for the reason that the 1960 assessments which are in issue in the present cases were not involved in the cases decided by the New Jersey Supreme Court. However, the administrative and judicial remedies afforded by State tribunals are and were equally available in both series of litigation. The determination by the highest court of New Jersey that there is an adequate administrative remedy for the review of the alleged unconstitutional assessment discrimination should be followed by this Court. The situation here presented is suggestive of, if not entirely similar to that involved in Chicago & Northwestern Railway Co. v. Lyons, D.C.S.D.Ill.1957, 148 F.Supp. 787. In the cited case, in which the defendants invoked 28 U.S.C. § 1341, the District Court reiterated the two principles which appear to this Court to be equally applicable in the present cases: (1) if there is an adequate remedy at law and in equity in the State courts, a Federal District Court is without jurisdiction to pass upon the alleged federal unconstitutionality of the action of a State taxing authority until the taxpayer has first exhausted his State remedies (citing Toomer v. Witsell, 1948, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460); and (2) in the absence of any basis for the conclusion that the State courts will fail to protect the taxpayer's federal constitutional rights, a federal court will refrain from interfering (citing Baker v. Atchison, Topeka & Santa Fe Ry. Co., 10 Cir., 1939, 106 F.2d 525, certiorari denied 1939, 308 U.S. 620, 60 S.Ct. 296, 84 L.Ed. 518). I fully concur in the view of the New Jersey Supreme Court that the present plaintiffs have adequate administrative and judicial remedies in New Jersey and, having so concluded, I deem section 1341 a complete proscription of the exercise by this Court of jurisdiction in these cases.

By stipulations filed April 25, 1960, all parties to these actions agreed to dismiss the same as to William Kingsley, individually.

I conclude that the complaints in these actions fail to set forth causes of action within the jurisdiction of this Court, and that no claim is set forth in the complaints upon which this Court may or should grant relief. Accordingly, the defendants' motions for judgment on the pleadings are granted. The complaints will be dismissed and appropriate orders may be presented in conformity with the views herein expressed.